MAURICE A. MITTELMAN AND CARMYLE MITTELMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6647.   Promulgated November 15, 1946.

*Sidney N. Weitz, Esq.*, for the petitioners.
*L. R. Bloomenthal, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: *Issue No. 1.*—The first of the four issues presented here for our decision is whether there was error in the respondent's determination that petitioner realized taxable income when he received in 1941 the net amount of $7,185.35 in settlement of a cause of action arising out of the error of a firm of accountants which resulted in petitioner's having paid in 1940 an excessive price for stock of a certain corporation which, in the same year, was exchanged by him for certain other stock. This exchange was a taxable transaction. Petitioner's basis for computing his taxable gain on the 1940 transaction included the excessive payment, and his tax, so paid, was less in amount than it would have been had the accounting error, and the payment pursuant thereto, not been made.

Petitioner argues simply that the amount of $7,185.35 received by him in 1941 was a return to him of a portion of his capital, and can not therefore be taxed as income.

It is the respondent's position that, petitioner having received a tax benefit in 1940 from the use of the higher cost basis as the result of a mistake, his recovery, in 1941 upon the rectification of the error, of a part of that expenditure which was so used to reduce his 1940 taxes is taxable as income, under the tax benefit theory.

The fact that the basic character of the item in question is capital in nature does not preclude the application of the tax benefit theory. See *Chevy Chase Land Co.*, 34 B. T. A. 150; *Marine Transport Co.* v. *Commissioner*, 77 Fed. (2d) 177; *Newman & Carey Subway Construction Co.*, 37 B. T. A. 1163.

We are of the opinion that, under the facts before us, the petitioner is properly taxable on the net amount of his recovery to the extent that he received a tax benefit in 1940 by reason of the payment thereof. The extent of this benefit and the consequent extent to which the amount of his recovery is includible in petitioner's taxable income for 1941 may be determined under Rule 50.

We are not persuaded to a different conclusion because the recovery came, nominally, at least, from the accountants who made the error, in view of the evidence which indicates the accountants served mainly as conduit for the return of the money from the payee to petitioner. See *Charles A. Dana*, 6 T. C. 177; *Boehm* v. *Commissioner*, 146 Fed. (2d) 553; affd., 326 U. S. 287.

Regardless of the fact that petitioner chose to institute action formally against the accountants instead of the corporation to which the amounts in question had been mistakenly paid, and the fact that the releases given recite the receipt of the money paid to petitioner in settlement of his claims to have been received (except for the nominal amount of $1) from the accountants, we can not close our eyes to the

realities of the situation. The amounts mistakenly paid by petitioner in 1940 were to the Michigan corporation, or, beneficially, to Goetz; those payments resulted in increasing his cost basis of the Michigan corporation stock transferred by him in a taxable exchange in that year; this increased cost basis was used by him in computing his gain on this exchange and the gain thus computed was included in his income reported for taxation in 1940; his taxes for that year were thereby reduced from the amount which they would have been had a correct basis for the Michigan corporation stock been used; the real reason for the payments made to petitioner in 1941, regardless of the legal causes of action pleaded by him in the suit against the accountants, was to rectify, to the extent of these payments, the mistake of 1940, and the greater part, at least, of these payments came to petitioner indirectly from the corporation to which the excessive payment had been made by mistake in 1940.

Respondent also makes a contention upon this issue which he summarizes on brief as follows:

This was an amount received in settlement of litigation and it is impossible to determine from the evidence whether any portion of such payment is properly allocable to capital recovery; as an alternative, the respondent contends that the pleadings on which the litigation was founded set forth claims for the recovery of lost profits rather than for recoupment of capital.

This contention, as well as the contention of petitioner that the recovery in question was simply the recovery of damages based on a claim of misfeasance against the accountants and should be treated as such, with no regard to the taxable transactions of 1940, are equally specious in that they both exaggerate the importance of the formal pleadings and releases in the suit against the accountants, and minimize the realities of the transactions of which this suit was but a part.

*Issue No. 2.*—In January 1941 petitioner purchased the assets of two solely owned corporations at a price equivalent to the book value of their assets at the time of purchase. The payment of this price was by the assumption of the corporation's debts and the execution of notes to the corporations in the amount of the excess of the book value of their assets over these debts. In 1941 the corporations were liquidated and petitioner reported as taxable gain the difference between his cost basis of the stock owned by him and the face amount of his notes distributed to him by the corporations as liquidating dividends. In computing the book value of the assets of the corporations, and, consequently, the amount of the notes, the inventory of merchandise of the corporations was treated as having a book value of $73,433.70, which was their invoice price less discount. This discount was carried on the books of the corporations in a so-called "Reserve" account. As merchandise was sold by the corporations, the discount in the

reserve account was charged out to profit and loss; in effect, deferring the income from discounts until the merchandise was sold. For income tax purposes, however, the corporations, being on an accrual basis, reported the discounts taken during the entire year for taxation, whether the merchandise was sold or not in that year. The figure at which the inventories were carried on the corporate books, invoice price less discount, was, as of the time of the liquidation, $73,433.70 instead of $76,915.54, which was the gross invoice price of the inventories. Petitioner reported as his gain on the liquidation the difference between his cost of the stock turned in and the amount of the notes distributed to him on liquidation of the corporations. The amount of these notes, and, consequently, the amount of petitioner's taxable gain, would have been greater in the amount of $3,481.84 had the gross invoice figure for inventory been used. Petitioner took the inventories up on his individual balance sheet as of February 1, 1941, at the net cost at which they had been carried on the corporate books, or $73,433.70. But, in reporting his profit on the sale of the merchandise during 1941 for taxation, he computed his profit by the use of the gross inventory cost figure, which was $76,915.54, resulting in a smaller taxable profit.

Petitioner is attempting to adopt, it seems to us, inconsistent positions with respect to this item of inventory. He purchased the assets of his solely owned corporations in January 1941 at a price which was computed by ascribing a value of $73,433.70 to the inventory in question. Therefore, this was petitioner's basis for the inventories thus acquired by him. As we have pointed out it was also the figure adopted by him for the purpose of determining the amount of the purchase money notes given by him to his corporations, and later distributed to him upon their liquidation; and his capital gain upon such liquidation was less by $3,481.84 than it would have been had the gross inventory figures been used. For the petitioner to be permitted to then use the gross inventory figures to calculate his profit from the sale of merchandise would result in an inconsistency not warranted by the statute. The bookkeeping methods or tax accounting practices of the corporations are extraneous to the issue. We are of the opinion that there was no error in respondent's determination on this point.

*Issue No. 3.*—The next issue relates to the determination by the respondent that petitioner's taxable income for 1941 arising from the liquidation by petitioner in that year of M. A. Mittelman, Inc., should be increased by the amount of $18,965.13 representing good will or going value of that corporation.

It is petitioner's contention that M. A. Mittelman, Inc., had no good will, since the business conducted by it in Cleveland, Ohio, was conducted in the name of the Lindner Co., the department store in which the shop was located under a lease. All the advertising was carried on

in the name of the Lindner Co.; the charge sales were made only to Lindner Co. charge customers, who were billed by the Lindner Co. therefor; the shoes so sold, except for specified brands, were stamped with the name of the Lindner Co. The name of M. A. Mittelman, Inc., never appeared to the public in connection with advertising, sales, or operation of the business.

The corporation had exclusive franchises for the sale of I. Miller and Carlisle shoes in the Cleveland area, but the agreements under which these franchises arose were oral and for an indeterminate period, cancellable at the will of the manufacturers. In spite of their disabilities, these franchises were without doubt valuable assets of the corporation. But they were assets, within themselves, separable and distinguishable from all other assets, including good will, and susceptible to separate valuation. Similarly, the lease under which M. A. Mittelman, Inc., occupied the space in the Lindner Co.'s department store was doubtless a valuable asset of the corporation. It was not, however, good will, but a separate asset susceptible of valuation as such.

These are the factors which, respondent argues, go to make up the item of good will which he valued at $18,965.13. He admits that the chief elements of good will are continuity of place (which the Mittelman Co. had only by virtue of a nonassignable lease) and continuity of name (and the Mittelman corporation's name had never appeared before the public in connection with the operation of its business). As we have seen, whatever value existed in the location is attributable to the lease, and no value can be attributed to the corporate name itself. It seems to us that whatever intangible value attached to petitioner's business sprang from the sale of well known and respected brands of shoes, and from the sale of those shoes in a location known to the public as a part of the Lindner Co.'s store. We can find no basis, in these peculiar circumstances, for the allocation of any value for good will of M. A. Mittelman, Inc. We conclude, therefore, that the respondent erred in this particular.

*Issue No. 4.*—Petitioner claimed a deduction in his 1941 return in the amount of $5,131.31 for traveling expenses paid in 1941 in connection with twenty-two trips to Rochester and Buffalo in New York and ten trips to New York City on business. Respondent allowed $1,218.23. At the hearing, petitioner testified that he had spent $3,960 on these trips, and had been reimbursed by his office for $3,900. He testified generally that the money was spent for railroad fare, hotel, meals, taxicabs, tips, and business entertainment. He did not offer any memoranda or documentary evidence to support his estimate. He spoke of the existence of memoranda of his expenses which he had made at or about the time of each trip, but he did not offer them in evidence, nor were any bookkeeping or other office or personal

records of any kind offered, although it seems most probable that such evidence was peculiarly available to the petitioner.

In our efforts to arrive at a reasonable allowance, we are especially handicapped by the complete lack of any evidence of any kind from which we could determine the usual or average duration of petitioner's stays in New York, Buffalo, and Rochester, and by the generality of the evidence with regard to items of expenditure.

Under the rule of *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, and upon all the evidence in the record, we have determined that petitioner's ordinary and necessary business expenses incident to these trips amounted to $2,100.

The fifth issue which was originally involved herein has been resolved by the concession of respondent that a gain of $1,693.87 from the disposition of certain assets reported by petitioner is taxable only to the extent of 50 per cent as a long term capital gain. Effect will be given to this concession under Rule 50.

*Decision will be entered under Rule 50.*