ALFRED W. BARBER AND EVELYN A. BARBER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32839. Promulgated December 31, 1952.

*Donal C. Noonan, Esq.*, for the petitioners.
*Robert McDonough, Esq.*, for the respondent.

OPINION.

Raum, *Judge:* Petitioner received $40,304.86 gross income in 1945 from the manufacture and sale of voltmeters, and seeks the benefit of section 107 (b) [1] of the Internal Revenue Code. There is no suggestion that the amount thus received in 1945 did not relate to operations,

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

\* \* \* \* \* \* \*

(b) PATENT COPYRIGHT, ETC.—For the purposes of this subsection, the term "artistic work or invention," in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months.

i. e., manufacturing and selling, conducted during that year. The claim to relief under section 107 is based exclusively upon the fact that the manufactured article had been patented, and that the period of time during which petitioner conceived and developed his invention, prior to issuance of the patent, was in excess of thirty-six months.

If the amount received by petitioner in 1945 had represented royalties upon the patent, then plainly section 107 would be applicable. Section 107 was enacted in order to relieve against the rigors of the annual system of reporting income, where a taxpayer receives a disproportionately large amount of income in one year attributable to work which he performed over a number of years. By reason of our system of graduated rates, such income might find itself in disproportionately high surtax brackets. Section 107 represents a legislative effort to correct such possible unfair treatment.[2] But the very theory of the relief granted by section 107 is that the income that is spread over a thirty-six month period is conceived to be attributable to an earning process extending over at least thirty-six months. Thus, where a taxpayer has spent three years or more in developing an invention, and thereafter receives at least the required 80 per cent income, in royalties, in one year, section 107 in effect permits him to spread such royalties over a longer period. In such circumstances, the royalties received in one year represent the fruits of his efforts covering a period of over three years, and he is afforded relief under the statute.

However, an entirely different situation exists in the present case. The sum which petitioner seeks to spread over thirty-six months is attributable at least in part, if not entirely, to manufacturing and selling operations carried on during a single year. During that year he had an average of about five employees, and he contributed his own efforts as well. Certainly, to the extent that the profits in question grow out of the manufacturing and selling operations, there is no foundation whatever for spreading the income over a 3-year period. It would be contrary to the basic theory of section 107, and nothing in the language of section 107 requires such result.

Of course, if it could be shown that some portion of the 1945 income from the manufacture and sale of the voltmeters was allocable to the patent, then there would be a basis for the application of section 107, but only to that extent. Cf. *Ramsey Accessories Manufacturing Corporation*, 10 T. C. 482. However, the difficulty with petitioner's case is that he has not undertaken to show what part, if any, of the receipts really depended upon the patent. And the record before us strongly suggests that no part of the receipts was attributable to the patent.

[2] See S. Rept. No. 648, 76th Cong., 1st Sess., p. 7 ; H. Rept. No. 2333, 77th Cong., 2d Sess., pp. 48–49, 90–91 ; S. Rept. No. 1683, 77th Cong., 2d Sess., pp. 108–110.

Petitioner had originally assigned the patent, reserving to himself a 10 per cent royalty. However, not a single voltmeter was ever produced or sold by the assignee. The assignee held the patent for a number of years and then reassigned it to petitioner in 1943. The demand for the voltmeters thereafter made and sold by petitioner was obviously related to the war effort, and we have no way of knowing on this record whether the price received for each voltmeter ($150) was computed in such manner as to include any amount as a royalty for use of the patent. For aught we know, there may have been various types of voltmeters on the market at that time, and the particular contribution made by petitioner's invention may not have rendered petitioner's voltmeters more valuable than any of the other voltmeters then available. We have nothing in the record before us to justify a conclusion that the $150 which petitioner received for each instrument included anything on account of the patent. This is not a case like *Cohan* v. *Commissioner*, 39 F. 2d 540, 543–544 (C. A. 2), where the record was clear that some portion of the item in controversy was entitled to the treatment sought by the taxpayer, and we were instructed to use our best judgment in making an apportionment. Here, the record fails to show that any part of the amounts received by petitioner was allocable to the patent. The burden of proof was on him and we think it has not been met.

Petitioner misconceives the scope and purpose of section 107 when he argues that, under the patent laws, he was given the exclusive right "to make, use and vend" the patented article. Of course, he has the exclusive right to manufacture and sell any article upon which he holds a valid patent, and such right grows out of the patent. But when Congress used the word "patent" in section 107, it surely must have intended it to be interpreted in the context in which it appeared. That context was an effort by Congress to grant relief to a taxpayer whose work has covered a number of years but whose compensation therefor is received in large part (at least 80 per cent) in one year. In the present case the income in question was directly attributable to manufacturing and selling operations which occurred in a single year, and, as we have indicated, there is nothing in the record before us to show that any part of that income was attributable to work done by the petitioner in developing his invention. The determination of the Commissioner must be upheld.

Reviewed by the Court.

*Decision will be entered for the respondent.*

HILL, *J.*, concurs in the result.