Irving Malbin and Dorothy Malbin v. Commissioner. Irving Malbin v. Commissioner.
Malbin v. Commissioner
Docket Nos. 36952, 47208.
United States Tax Court
T.C. Memo 1954-121; 1954 Tax Ct. Memo LEXIS 125; 13 T.C.M. (CCH) 773; T.C.M. (RIA) 54227; August 12, 1954, Filed *125 Petitioner was in the wholesale meat business during the tax years 1943 through 1946. His books and records admittedly did not accurately reflect his business income for those years and he failed to at any time produce the books maintained for 1943 and 1946. Held: 1. Petitioner's net income and tax deficiencies for 1943 through 1946 determined by adjusting certain items as reported in his returns. 2. Petitioner's deficiencies for 1944 and 1945 were due in part to fraud with intent to evade taxes. The deficiency for 1946 is not due to fraud with intent to evade tax. Fraud was not alleged for 1943. 3. Petitioner is liable for section 294(d)(2) penalties resulting from substantial underestimation of estimated tax in 1944, 1945, and 1946. Leo Sussman, Esq., 320 Broadway, New York, N. Y., for the petitioners. Arthur L. Nims, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner, in Docket No. 36952, has determined a deficiency of $6,018.13 in the 1943 income and victory taxes of Irving and Dorothy Malbin. The statement accompanying the deficiency notice explains that the deficiency stems from an increase in reported business net income resulting "from purchases of $15,000.00 disallowed for lack of substantiation and disallowance of depreciation of $125.00 taken on a fully depreciated asset." In Docket No. 47208, the Commissioner has determined the following *127 deficiencies and penalties in Irving Malbin's income taxes for 1944, 1945 and 1946: 50%
6% Esti-
Fraud
mated Tax
Penalty
Penalty
(Sec.
(Sec.
Year
Deficiency
293(b))
294(d)(2))
1944
$ 82,597.37
$41,298.68
$4,905.54
1945
128,749.35
64,374.68
7,861.08
1946
33,043.87
16,521.93
2,193.66 The statement accompanying the deficiency notice explains that the deficiencies result from the following adjustments in reported business net income: 1944
1945
1946
Sales omitted
$ 15,500.00
$ 3,796.51
Unaccounted for cash deposits
45,854.73
65,673.51
Unsubstantiated purchases disallowed
22,157.63
81,943.24
$35,000.00
Mark-up of 25% on purchases not recorded on books
and allowed as a deduction below
113,947.21
Unsubstantiated entertainment expenses disallowed
2,500.00
Obsolescence - tire equipment disallowed
2,959.77
Unsubstantiated petty cash expenses disallowed
1,419.69
Unsubstantiated professional fees disallowed
3,115.05
Unsubstantiated commissions paid disallowed
4,579.23
Unexplained cash deposit
3,900.00
Total
$197,459.57
$153,913.26
$50,973.74
Less: Additional purchases allowed
91,157.77
Understatement of [business] income
$106,301.80
$153,913.26
$50,973.74
*128 Two additional adjustments for 1946 which increase the alleged understatement of net income for that year to $51,903.74, are explained as follows: "(b) Contributions in the amount of $560.00 claimed on the return * * * are disallowed for lack of substantiation. "(c) Entertainment expense in the amount of $370.00 claimed on the return * * * is disallowed for lack of substantiation." By appropriate assignments of error in both dockets, petitioners have placed all of the aforementioned adjustments in issue and contest all of the deficiencies and penalties determined by the Commissioner. Findings of Fact Irving Malbin and Dorothy Malbin were husband and wife who, during the tax years in issue, lived in Brooklyn, New York, and filed their income tax returns with the Collector of Internal Revenue for the First District of New York. Dorothy Malbin is involved in these proceedings (in Docket No. 36952) only as a result of having filed a joint return with her husband for the calendar year 1943. Consequently, references hereinafter to "petitioner" are intended as references solely to Irving Malbin. Petitioner, during the years in issue, was engaged in the business of selling meat *129 at wholesale to retail butchers, restaurants, and the like. From 1944 through 1946, the business had seven or eight employees. Although not a certified public accountant petitioner had at one time worked for an accountant and was familiar with accounting practices. He personally installed a set of books for his business and was at all times familiar with those books and the entries therein. He knew that the book entries, and the tax returns prepared therefrom for the years in issue, did not accurately reflect the business activity. In particular he did not correctly record the amounts of purchases and sales because they were being made at prices in excess of those prescribed by the Office of Price Administration. Respondent, consequently, determined petitioner's net income and tax liability by making adjustments in certain items appearing in petitioner's returns for 1943 through 1946. 1943 Petitioner's return for 1943 (which was a joint return filed together with his wife, Dorothy) reported income from the wholesale meat business as follows: Total receipts
$207,925.88
Cost of goods sold: Purchases
$201,060.45
Less closing inven-
tory
4,362.49
Net cost of goods sold
196.697.96
Gross profit
$ 11,227.92
Less certain itemized business ex-
penses
6,298.27
Net profit
$ 4,929.65
*130 No books or records for 1943 were made available to respondent's agent, other than certain bank statements, nor were any presented in evidence at the hearing. Respondent disallowed $15,000 of the purchases claimed on the return for lack of substantiation. Respondent also disallowed an itemized business expense of $125, claimed as depreciation on a 1936 half-ton truck, for the reason that the truck had been fully depreciated. Petitioner overstated purchases for 1943 by $15,000 and erroneously claimed the $125 deduction for depreciation. 1944 Petitioner's return for 1944 reported business income as follows: Total receipts
$1,192,773.43
Cost of goods sold [pur-
chases during year]
1,128,125.28
Gross profit
$ 64,648.15
Less certain itemized busi-
ness expenses
51,557.35
Net profit
$ 13,090.80 All of petitioner's books and records for 1944 were made available to respondent's agent, who inspected and returned them to petitioner, but none were introduced in evidence by petitioner at the hearing of this case. Those books and records consisted of the following: cash receipts book, cash disbursements book, general ledger, purchase memorandum book, sales journal, *131 and a number of independent sales books from which the postings to the sales journal were made. Each independent sales book contained copies of from 40 to 50 invoices. The invoices in each book were totaled on an adding machine tape which total was posted to the sales journal. From the sales journal a monthly posting was made to the general ledger and the sum of those ledger postings equaled the total receipts figure on the 1944 return. The adding machine tape totals of the individual sales book entries for 1944 exceeded the postings to the sales journal by $15,500. These erroneous sales journal postings were carried to the general ledger and were reflected in petitioner's return. Petitioner, consequently, understated sales (total receipts) for 1944 by $15,500. All purchases both those paid for in cash and by check, were recorded in the purchase memorandum book. Only those purchases paid for by check were recorded in the cash disbursements book and subsequently carried to the general ledger and reflected in the return. Checks totaling $22,157.63 drawn to "Cash" and endorsed "I. Malbin, for cash," were entered in the cash disbursements book as purchases. They were not supported *132 by bills or other vouchers and the lack of such support was unexplained. Respondent, therefore, disallowed the $22,157.63 as purchases. In seven instances bills exceeded the checks drawn in payment thereof and recorded in the cash disbursements book - the combined excess totaling $12,868.69. Moreover, excluding the purchases represented by the seven bills, total purchases listed in the purchase memorandum book exceeded total purchases listed in the cash disbursements book and carried to the ledger and the return by $78,289.48. Respondent, therefore, added $91,157.77 [1] to the purchases reported on petitioner's return, applied a 25 per cent markup to those additional purchases, and increased reported receipts by $113,947.21. The $22,157.63 proceeds of the checks drawn to "Cash" and endorsed by petitioner actually were used to pay for part of the $91,158.17 in purchases discussed in the preceding paragraph and were properly charged to purchases in the cash disbursements book. Additional purchases unrecorded in the cash disbursements *133 book and the return, therefore, equaled $69,000.54 ($91,158.17 minus $22,157.63). An average markup of 12 1/2 per cent, rather than 25 per cent, was applied to those additional purchases by petitioner thereby resulting in additional receipts of $77,625.61, which were not reported on petitioner's 1944 return. Wholesale meat dealers in general realized a markup of 5 per cent to 9 per cent during the period 1943-1946, but petitioner realized 12 1/2 per cent in 1944 due to the fact that he was selling at over-ceiling prices. Respondent determined that, in 1944, the total of (a) deposits to the bank accounts of petitioner and Dorothy, (b) money used to purchase Series "E" U.S. Government bonds, and (c) undeposited "Cash on hand" on the business books, exceeded total receipts reported in petitioner's return ($1,192,773.43) by $45,854.73. Respondent added that sum to petitioner's net income for 1944. Total receipts reported were actually exceeded by the lesser sum of $41,163.28, and such excess is attributable to the heretofore mentioned $15,500 and $77,625.61 in receipts omitted from the return. The $41,163.28 does not, therefore, represent omitted receipts in addition to that $15,500 *134 and $77,625.61. On July 12, 1945, in the United States District Court for the Eastern District of New York, petitioner pleaded guilty to 16 counts charging him with violations, between January 5 and June 15, 1944, of sections 2(a), 4(a), and 205(b) of the Emergency Price Control Act of 1942. He was sentenced to 3 months imprisonment on each count, to be served concurrently, and a total fine of $1,000. 1945 Petitioner's return for 1945 reported business income as follows: Total receipts
$1,585,401.40
Cost of goods sold [pur-
chases during year]
1,505,203.38
Gross profit
$ 80,198.02
Less certain itemized busi-
ness expenses
63,425.43
Net profit
$ 16,772.59
The same books and records were kept as for 1944. Only one of the individual sales books was made available to respondent's agent but all of the other books were turned over to him. Respondent's agent inspected and returned the books to petitioner but they were not introduced in evidence in this case. The one individual sales book made available to respondent's agent contained sales totaling $3,796.51, but that total was not posted to the sales journal or carried through to the ledger and the *135 return. The $3,796.51 constitutes additional receipts to petitioner for 1945. Petitioner, in the cash disbursements book, had charged to purchases $81,943.24 in checks which had been endorsed and cashed by petitioner and for which there were no supporting bills or other vouchers. Respondent disallowed those purchases for lack of substantiation. Petitioner overstated purchases by $81,943.24. Respondent determined that, in 1945, petitioner and his wife had made unaccounted for bank deposits and Series "E" bond purchases of $65,673.51 in excess of total receipts reported. Respondent added that sum to income. The bank deposits of petitioner and his wife, and their bond investments, totaled $1,366,559.93, whereas petitioner reported total receipts of $1,585,401.40. There were no unaccounted for bank deposits and bond investments in 1945. Among the itemized business expenses deducted by petitioner for 1945 were "Entertainment $3,165.00." Petitioner failed to substantiate, and respondent therefore disallowed, $2,500 of that claimed deduction. Petitioner overstated entertainment expenses for 1945 by $2,500. 1946 Petitioner's return for 1946 reported business income as follows: *136 Total receipts
$204,009.04
Cost of goods sold [purchases during
year, plus storage and freight]
171,531.45
Gross profit
$ 32,477.59
Less certain itemized business ex-
penses
24,911.39
Net profit
$ 7,566.20 No books or records were made available to respondent's agent for 1946, despite the fact that he requested them a number of times, and none were introduced in evidence by petitioner. Respondent disallowed $35,000 of the purchases reported on petitioner's return for 1946 for lack of substantiation. Petitioner did not overstate his purchases by $35,000 or any other amount for 1946. Respondent made the following addition to petitioner's income: "Unexplained cash deposit $3,900.00." No evidence or explanation bearing on this adjustment was presented by petitioner. Petitioner's net income was understated by the amount of the $3,900 cash deposit. Among the itemized business expenses reported on petitioner's 1946 return were the following: Obsolescence - tire equipment
$2,959.79
Petty cash expenditures
1,419.69
Professional fees
3,115.05
Commission
4,579.23 Those claimed expenses, totaling $12,073.76, were disallowed by respondent *137 for lack of substantiation. Petitioner incurred petty cash expenditures of $419.69 and professional fees of $615.05 in 1946. The remainder of the aforementioned expenses, totaling $11,039.02, were improperly deducted on petitioner's return. In determining his net income petitioner also deducted $560 for charitable contributions and $370 for "Entertainment of customers not reimbursed by business." Respondent disallowed these deductions in toto for lack of substantiation. No evidence or explanation was introduced by petitioner bearing on those deductions. Petitioner improperly claimed those deductions. Petitioner realized he had understated reported net income for each of the years 1943 through 1945 and that his books did not properly reflect his income for 1946. Therefore, after consulting his attorney who aided in the preparation of his 1946 return, he added to reported income for 1946 the following item: "Commissions received $10,000." He claimed that the $10,000 equaled the difference between net business income earned and net business income reported for 1943 through 1946. The $10,000 does not represent income for 1946 and is not reportable as such. The following schedules *138 show the net income reported by petitioner for each of the years in issue and summarize the above discussed adjustments thereto held by us to be proper on the basis of the evidence: 1943 Net income per tax return (for income tax
purposes) [2]
$ 4,800.65
Add: 1. Purchases disallowed
$15,000.00
2. Depreciation disallowed
125.00
15,125.00
Net income for 1943
$ 19,925.65 [2]
1944 Net income per tax return
$ 12,430.80
Add: 1. Unreported receipts
$15,500.00
2. Receipts computed by applying 12 1/2%
markup to unreported purchases of
$69,000.54
77,625.61
93,125.61
$105,556.41
Deduct: 1. Unreported purchases
69,000.54
Net income for 1944
$ 36,555.87
1945 Net income per tax return
$ 17,046.57
Add: 1. Unreported receipts
$ 3,796.51
2. Purchases disallowed
81,943.24
3. Entertainment expenses disallowed
2,500.00
88,239.75
Net income for 1945
$105,286.32
1946 Net income per tax return
$ 15,881.02
Add: 1. Obsolescence deduction disallowed
$ 2,959.77
2. Petty cash expense disallowed
1,000.00
3. Professional fees disallowed
2,500.00
4. Commissions paid disallowed
4,579.23
5. Unexplained cash deposit
3,900.00
6. Contributions disallowed
560.00
7. Entertainment expenses disallowed
370.00
15,869.00
$ 31,750.02
Deduct: 1. Commissions received [no such commissions
received]
10,000.00
Net income for 1946
$ 21,750.02
*139 Penalties Petitioner's deficiencies for 1944 and 1945 were due, at least in part, to fraud with intent to evade tax. Petitioner's deficiency for 1946 is not due to fraud with intent to evade tax. Respondent does not claim that the deficiency for 1943 was due to fraud. Petitioner's income for 1944, 1945, and 1946 came entirely from sources other than wages. He filed declarations of estimated tax for 1944 and 1945 in which he estimated his tax as $4,000 and $2,979.64, respectively. Those estimated taxes were paid. He did not declare or pay estimated taxes for 1946. Opinion BLACK, Judge: It is axiomatic that "The Commissioner has authority to check the returns against the records of the taxpayer and, if no records have been kept or if the records are incomplete, inaccurate, or otherwise unsatisfactory, he may seek information elsewhere to discover, assess, and collect the full tax liability imposed by law." Louis Halle, 7 T.C. 245, 250, affd. (C.A. 2) 175 Fed. (2d) 500, *140 certiorari denied 338 U.S. 949. The petitioner bears the burden of proving the Commissioner's deficiency determination erroneous and this is so even though fraud is also alleged. The burden of proving the alleged fraud by clear and convincing evidence rests, on the other hand, upon the Commissioner. Snell Isle, Inc., v. Commissioner, 90 Fed. (2d) 481, certiorari denied 302 U.S. 734; Wiseley v. Commissioner (C.A. 6), 185 Fed. (2d) 263. Petitioner, in the instant case, admits that his books for 1943 through 1946, and the returns prepared therefrom, do not accurately reflect his income. Moreover, for 1943 and 1946 no books were made available to respondent nor were any introduced in evidence at the hearing. Respondent's authority to determine petitioner's correct taxable income for all those years is, therefore, beyond question. In exercising that authority respondent made corrective adjustments to certain items appearing in petitioner's returns for each year involved. Petitioner introduced no affirmative evidence directly bearing upon those adjustments and, on cross examination of respondent's witnesses, elicited facts relating *141 to only a few of the adjustments, which facts we have taken into account in arriving at our findings. Petitioner's chief argument, rather, is that his income should be determined on the basis of the increase in net worth method in accordance with net worth calculations he has prepared. His contention, as it appears to us, is that his increase in net worth between January 1, 1943 and December 31, 1946, plus living expenses and income and victory taxes paid during that period, equals the net income reported by him for those four years as increased by $10,000 he arbitrarily added to his 1946 return when he realized he had been understating reported income since 1943. He maintains, therefore, that the $10,000 addition to his 1946 return squares his account with the Government and that respondent erred in determining deficiencies for the years 1943 through 1946. Petitioner's position cannot be sustained. The choice as to which method of computation of income shall be applied in a situation such as this, wherein no books are produced or inaccurate books have been kept, rests not with the petitioner but with the respondent. Section 41, I.R.C.; [3]Louis Halle, supra. *142 Respondent has here chosen to accept the accounting method adopted by petitioner, making adjustments only to correct for errors committed by petitioner in the application of that method. The petitioner may not himself, therefore, disavow his adopted method and compel the use of the net worth method whose nature and characteristics this Court has described in Michael Potson, 22 T.C. , filed July 15, 1954, to wit: "The net worth method is not a system of accounting. Where the taxpayer's increase in net worth is substantially in excess of his reported income and where the discrepancy cannot be reasonably explained as being attributable to * * * nontaxable receipts, the net worth method furnishes persuasive evidence of unreported income. And in determining the amount of net income for any such period it is necessary to add all nondeductible expenditures made by the taxpayer during that period, for such expenditures represent additional unexplained resources available to the taxpayer, over and above the increase in net worth. * * *" *143 The so-called net worth statements submitted by petitioner at the hearing were largely unsubstantiated and could not be accepted as any showing of what petitioner's net income was for the respective taxable years. Turning to a consideration of the specific adjustments made by respondent in petitioner's reported income for 1943 through 1946, it is first noted that the validity of those adjustments is primarily questions of fact and we have, in our findings, detailed our conclusions thereon. We think it would best serve the interests of brevity, therefore, if we here discussed those findings not chronologically but, rather, in groupings determined on the basis of the reasons for the findings in each group. A. We have sustained respondent's additions to total receipts, of $15,500 for sales omitted in 1944 and $3,796.51 for sales omitted in 1945, on the basis of affirmative evidence by respondent's agent that his inspection of petitioner's books and records revealed such sales were unreported. Petitioner failed to rebut that evidence. B. The adjustments by respondent which are listed below were sustained in their entirety because petitioner did not carry his burden of proof. He *144 introduced no evidence whatever which would tend to prove those adjustments incorrect. Burnet v. Houston, 283 U.S. 223; Leslie A. Sutor, 17 T.C. 64, 68. Moreover, as regards the disallowed deductions, since the record contained no evidence indicating that any amounts were expended for the purposes claimed or that any depreciation or obsolescence deduction was properly allowable, the Cohan rule requiring an estimate of such expenditures and deductions was not applicable. Cohan v. Commissioner (C.A. 2), 39 Fed. (2d) 540, 543-544; John L. Ashe, Inc., v. Commissioner (C.A. 5), 214 Fed. (2d) 13; Alfred W. Barber, 19 T.C. 600, 604. Year
Adjustment
Amount
1943
Depreciation deduction disallowed
$ 125.00
1945
Entertainment expense deduction disallowed
2,500.00
1946
Obsolescence deduction (tire equipment) disallowed
2,959.77
1946
Commissions paid deduction disallowed
4,579.23
1946
Contribution deduction disallowed
560.00
1946
Entertainment expense deduction disallowed
370.00
1946
Cash deposit added to net income
3,900.00
C. As regards two adjustments for 1946, the evidence of record *145 called for the application of the Cohan rule, supra. Our Findings
Respondent's Adjustment
Allowed
Disallowed
Petty cash expense deduction disallowed
$1,419.69
$419.69
$1,000.00
Professional fee deduction disallowed
3,115.05
615.05
2,500.00 In 1946, petitioner's business had seven or eight employees and grossed $204,009.04. We think a business of that size must have incurred minor expenditures for which a petty cash fund was maintained. The record also indicates that petitioner retained the same attorney who is representing him in this case to aid him in reporting business income for 1946. We think a fee must have been charged for that service. In both instances, therefore, we have used our best judgment in determining the deduction allowable "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, supra. D. Respondent disallowed claimed deductions for purchases of $15,000 in 1943, $81,943.24 in 1945, and $35,000 in 1946. Our findings coincide with respondent's determinations for 1943 and 1945. For neither year did petitioner produce evidence substantiating the disallowed deductions. *146 Moreover, we have found that petitioner's total receipts represented an average markup of 12 1/2 per cent over cost of goods sold for 1944 and that wholesale meat dealers in general realized markups of 5 per cent to 9 per cent for the period 1943-1946. With these facts in mind it is noted that, even after the disallowed purchases are omitted from cost of goods sold, the markup reflected is only 6.18 per cent for 1943 and 5.64 per cent for 1945. The reasonableness of such a result is evident and convinces us that respondent's adjustments for 1943 and 1945 are valid. As regards 1946, however, the markup reflected by total receipts over cost of goods sold is 18.9 per cent before respondent's disallowance of $35,000 in purchases, and 23.79 per cent after such disallowance. When this is coupled with the admission of respondent's agent that the $35,000 disallowance was no more than a guess [4] we think it clear that respondent's determination was erroneous and, consequently, arbitrary and excessive. Chevy Chase Land Co., 34 B.T.A. 150; Helvering v. Taylor, 293 U.S. 507. *147 For 1944, respondent disallowed purchases totaling $22,157.63 because they could not definitely be identified with any bills or vouchers but were represented only by checks drawn and cashed by petitioner. Respondent, on the other hand, allowed additional purchases totaling $91,157.77, which he found recorded in petitioner's records but not reflected on the return, and added $113,947.21 to total receipts, which he calculated by applying a 25 per cent markup to the $91,157.77. The evidence established that petitioner often paid for his purchases either partly or wholly in cash and that this was done because those purchases were made at prices in excess of prices prescribed by the Office of Price Administration. We have found, therefore, that the claimed additional purchases, which actually totaled $91,158.17 rather than $91,157.77, were in fact paid for in part by the $22,157.63 in cash withdrawn by petitioner and that respondent erred in disallowing that $22,157.63. Net additional purchases are consequently reduced to $69,000.54 ($91,158.17 minus $22,157.63). We have also found that 12 1/2 per cent, rather than 25 per cent, is the proper average markup to be applied to those net additional *148 purchases and that, therefore, total receipts for 1944 may properly be increased by no more than $77,625.61. E. Respondent added $45,854.73 to petitioner's reported net income for 1944 and $65,673.51 to his reported net income for 1945, on the theory that bank deposits, bond purchases and undeposited cash in each year exceeded total receipts by those amounts and that such excess represented income. Our findings of fact indicate that although total receipts reported for 1944 were exceeded by $41,163.28 in deposits, bond purchases and cash, the adjustments in total receipts made herein more than eliminate that excess. As for 1945, we have found that reported total receipts were not exceeded as alleged by respondent. Respondent, consequently, cannot be sustained in these determinations. F. Petitioner arbitrarily added $10,000 to his reported income for 1946, designating it "Commissions received." He did this, so he testified, because he had understated reported net business income for 1943 through 1946. The $10,000 does not represent income for 1946 and must be deducted from reported net income for that year. Respondent determined that for 1944, 1945, and 1946 petitioner's deficiencies *149 were due, at least in part, to fraud with intent to evade taxes. [5] We think that respondent has sustained his burden of proving fraud for the years 1944 and 1945 by clear and convincing evidence. For the year 1946, we do not think the Commissioner has sustained his burden of proving fraud. His main adjustment for 1946 was to add to the income reported on petitioner's return, $35,000 as "Unsubstantiated purchases disallowed." We have held that this adjustment was unwarranted and had no basis in fact. While we have sustained respondent in some of the adjustments which he made to petitioner's 1946 return, we are not convinced that they were omitted from petitioner's return with a fraudulent intent. As to the taxable years 1944 and 1945, petitioner, an intelligent businessman conversant with accounting practices and procedures, deliberately falsified his books and records so that large sums of income would not be reflected therein. That such action might have been taken to evade prosecution for O.P.A. violations is no defense here since petitioner knowingly deliberately reported and paid tax on his income computed on the basis of those false book entries. In those two years, petitioner *150 was doing a large business in black market operations. In 1944, he reported gross sales of $1,192,773.43 with a total net profit of only $13,090.80. In 1945, he reported gross sales of $1,585,401.40 with net profits of only $16,772.59. He made no sincere attempt, in our opinion, to report his true net income for the years 1944 and 1945. Under such circumstances sustaining respondent's fraud determination is called for in the light of such cases [as] Spies v. United States, 317 U.S. 492; Sam D. Hecht, 16 T.C. 981, 987; George A. Manos v. Commissioner (C.A. 6), 187 Fed. (2d) 734, affirming a memorandum opinion of this Court [8 TCM 1025,]; Wallace H. Petit, 10 T.C. 1253; Estate of Joseph Nitto, 13 T.C. 858; and David J. Pleason, 22 T.C. 361, filed May 20, 1954.
*151 Regarding the inclusion of $10,000 "Commissions received" in the 1946 return, which petitioner testified was for the purpose of making up the difference between business income returned for the period 1943 through 1946 and that actually earned, it is clear that such action does not eliminate the fraud committed in the filing of the original returns for 1944 and 1945. Aaron Hirschman, 12 T.C. 1223; Harry Sherin, 13 T.C. 221, 229. Respondent has determined penalties, under section 294(d)(2) of the Code, [6] for substantial underestimation by petitioner of his estimated taxes for 1944, 1945, and 1946. It is clear from our findings of fact that petitioner is liable for such penalties. Their exact amounts will be determined in the Rule 50 computation. *152 Decisions will be entered under Rule 50. Footnotes
1. This figure was intended to equal the sum of $12,868.69 and $78,289.48. However, it is in error by 40 cents, the actual sum being $91,158.17.↩
2. Reported victory tax net income was $4,929.65. Victory tax net income, as adjusted, is $20,054.65.↩
3. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be), in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩
4. Transcript of Hearing, p. 120: Q * * * With respect to '46 there you just guessed at a figure of $35,000, is that correct? A Yes. Q You just took it for granted? A Well, as I mentioned before, I think Mr. Nims brought out the fact that those books and records weren't made available to me, and in order to protect the Government's interest, and in line with what had been done in previous years, I made an automatic deduction, that is true. Q But it had no basis in fact? A No basis.↩
5. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2)↩.
6. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - * * *
(2) Substantial Underestimate of Estimated Tax. - If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), * * * exceeds the estimated tax (increased by such credits) there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *↩