Jorgen D. BERING and Winifred E. Bering, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 23973.

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1970.

Rehearing Denied Jan. 13, 1971.

---

Julian Caplan (argued), San Francisco, Cal., for petitioners-appellants.

Paul Ginsburg (argued), Atty., Johnnie M. Walters, Asst. Atty. Gen., Richard M. Hahn, Acting Chief Counsel, Washington, D. C., for respondent-appellee.

Before MERRILL, CARTER and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

Appellants seek review of a decision of the Tax Court upholding the Commissioner in assessing an income tax deficiency of $13,934.31 for the year 1963.

Appellant taxpayer [1] is an inventor of a stainless steel valve, patent for which was obtained in 1959. The question presented is whether he is entitled to the income-spreading benefits of the original version of § 1302 of the Internal Revenue Code, 26 U.S.C. § 1302 (1958),[2] as to the income derived "in respect of" the invention. The Tax Court held that he had failed to establish that "not less than 80 per cent of the gross income in respect of such invention" was received in 1963.

After securing his patent in 1959, taxpayer attempted unsuccessfully to interest others in obtaining licenses. Failing to do so, he had parts made by a machine shop and assembled them himself. His sales during 1959, 1960 and 1961 did not result in profit. Thereafter he was able to interest two large companies in his product and, since they did not wish to do their own manufacturing under license, commenced manufacturing the product himself. His income from the sale of the patented valve was, for 1963, substantially greater than in previous years.

Had the taxpayer been able to sell the patent to customers who would themselves provide for the manufacture of

---

1. We refer to appellant Jorgen D. Bering. Winifred E. Bering is joined since appellants are husband and wife and filed a joint tax return.

2. "Sec. 1302. *Income From An Invention Or Artistic Work.*

(a) Limitation on Tax.—If—

(1) an individual includes in gross income amounts in respect of a particular invention or artistic work created by the individual; and

(2) the work on the invention or the artistic work covered a period of 24 *months or more (from the beginning* to the completion thereof) ; and

(3) the amounts in respect of the invention or the artistic work includible in gross income for the taxable year are not less than 80 percent of the gross income in respect to such invention or artistic work in the taxable year plus the gross income therefrom in previous taxable years and the 12 months immediately succeeding the close of the taxable year, then the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over, in the case of an invention, that part of the period preceding the close of the taxable year or 60 months, whichever is shorter, or, in the case of an artistic work, that part of the period preceding the close of the taxable year but not more than 36 months.

(b) Definitions.—For the purpose of this section—

(1) Invention.—The term 'invention' means a patent covering an invention of the individual."

the patented article, the taxpayer's income in respect of the invention would be represented by the customary royalties of sales price received for the use of the patent. But, where an inventor acts as his own manufacturer, the income in respect of the invention is a part of the profits from sale of the patented article. The problem is how to apportion the profits between income from the invention itself and income from the entrepreneurial enterprise of manufacture and sale. *See* Alfred W. Barber, 19 T.C. 600 (1952). The question is not dealt with by regulation. The Tax Court did not come up with an answer. It simply rejected the formula proposed by the taxpayer, which appears to be the only one by which 80 per cent of gross income from the invention could be made to fall in the year 1963.[3]

Appellant did not attempt to hypothesize a reasonable royalty, or any arms-length arrangement for compensation of the inventor by one who produces or otherwise exploits the product of the invention. Instead he reasoned as follows: postulating an arrangement by which a machine shop is employed by the inventor to do the manufacturing and is compensated on a cost-plus basis, he concluded that all net profits above that "plus" should be attributable to the invention.

We agree with the Tax Court that this is not an acceptable method of determining the extent of income fairly attributable to the invention itself. At the least it must be said that the resulting figure represents return not only for the creative process resulting in the invention itself, but also for such exploitation activities as sale and distribution of the manufactured product.

Judgment affirmed.

3. Under the common royalty arrangements according to which the manufacturer pays the inventor a fixed sum per article sold or a percentage of receipts, the taxpayer would not here qualify. Only 42.47 per-

cent of the total number of valves sold were sold in 1963; only 56.77 percent of the gross receipts from the sale of valves accrued in 1963.