## UNITED BUSINESS CORPORATION OF AMERICA v. COMMISSIONER OF INTERNAL REVENUE.
### No. 17.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1933.

H. Duane Bruce and William A. Mackenzie, both of Syracuse, N. Y., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and A. H. Fast, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The petitioner is a corporation organized on April 1, 1920, to take over real property in Seattle, conveyed to it by one Smith, its sole shareholder, except for a few shares to qualify directors. During the year Smith also transferred to it a large number of shares of stock, which he had held for some time before; and still more in 1921. The Board found in view of the business of the company and of the manner of acquisition of the

shares, that during the second year the income from them was allowed to accumulate in order to avoid payment by Smith of surtaxes upon the dividends which he would otherwise have received upon them. It was not sure that this had also been his purpose in the first year, and therefore declined to make a like finding for that period. It held that the case fell within section 220 of the Revenue Act of 1921 (42 Stat. 247) and assessed the taxpayer a deficiency of twenty-five per cent. of its income tax as computed for that year. We have not the evidence before us, but the findings disclose a situation which justifies the conclusion, for Smith paid taxes upon a substantial income in 1918 and 1920, and borrowed largely from the petitioner in 1920 and 1921. These loans are incompatible with a purpose to strengthen the financial position of the petitioner, but entirely accord with a desire to get the equivalent of his dividends under another guise. While the Board has not so found, it may be assumed that the company's income, including that derived from the shares, was no more than reasonable for its business needs. The objections to the order in this court are substantially as follows: That section 220 applies only when the accumulation is unreasonable for the corporate purposes; that it was applied retroactively, and, since it imposed a penalty, could not be constitutionally enforced before it was passed; that it is too uncertain in its terms to be valid; that it offends the Tenth Amendment; and that the interpretation adopted by the Board violated settled administrative construction.

■ The section declares that when a company is formed or used "for the purpose of preventing the imposition of the surtax upon its stockholders" by allowing "its gains and profits to accumulate instead of being divided or distributed," it shall pay twenty-five per cent. more than its proper tax. It is presumptive evidence of such a purpose that it is "a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business," provided that the Commissioner shall so certify. Ordinarily it will indeed be difficult to prove the forbidden purpose, unless the accumulations are too large for the fair needs of the business. But it may not be impossible to do so, even though the profits arise out of normal business, as they did not here. The management may for example be shown to have always been sanguine, and to have withheld only small reserves, though prudence justified more. A sudden change of policy, coincident with large increases in the surtax rates, might

in that situation betray a purpose to accumulate against a season more propitious for distribution. Or the officers might unguardedly disclose a scheme to avoid surtaxes, though the other evidence was not enough. A statute which stands on the footing of the participants' state of mind may need the support of presumption, indeed be practically unenforceable without it, but the test remains the state of mind itself, and the presumption does no more than make the taxpayer show his hand. Pariso v. Towse, 45 F.(2d) 962 (C. C. A. 2); Alpine Forwarding Co. v. Pennsylvania R. R. Co., 60 F.(2d) 734 (C. C. A. 2).

■ Here the purpose appears to us, if not transparent, at least plain enough to leave no doubt. The company was in its origin no more than a convenience for Smith's real property holdings. While its charter allowed other activity, unless it were to buttress its financial position, it was discordant with the main design to fill it with nearly nine hundred thousand dollars of shares of stock. Smith was patently in control; when he turned over his personal holdings to exempt himself from taxation, he was using the company for that purpose, and the company, his creature, by its complaisance incurred the added tax. It answers that the Treasury has itself ruled that the unnecessary accumulation of income is a condition upon the tax, and that we should defer to this interpretation. It is true that the regulations construing the same section of the Act of 1918, coupled the presumption with the test itself, as though both were necessary (article 352, Regulations 45), and the same notion appeared in an advisory tax memorandum (Cumulative Bulletin No. 1, p. 181); but in 1921 (article 352, Regulations 62), this was changed, and the correct interpretation adopted. We should not, we think, have yielded even to an unbroken interpretation in so plain a case, but the change in the regulations avoids our declaring ourselves positively.

■ The intent being plain, the only question is whether Congress expressed its will certainly enough to be enforced, and whether any other constitutional obstacle is in the way. The argument is that the standard set is too vague for execution; that it is impossible definitely to say when the purpose of those who use the corporation to accumulate its profits is to exonerate its shareholders. Purpose is indeed not often a factor in legal transactions, though at times it is; but intent is often material, and whatever the difficulties of proof, the issue is concrete

enough. Nothing is more frequent in human relations than the effort to learn what goes on in others' minds. The presumption is indeed less definite, and it is this especially that the petitioner attacks, relying upon the decisions which upset the efforts of Congress to control prices during the Great War. U. S. v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. The argument misconceives the scope of those decisions. Standards of conduct, fixed no more definitely, are common in the law; the whole of torts is pervaded by them; much of its commands are that a man must act as the occasion demands, the standard being available to all. The vice of fixing maximum prices is that it requires recourse to standards beyond ascertainment by sellers, by which therefore they cannot in practice regulate their dealings. That is not true of the reasonable needs of a business, which is immediately within the ken of the managers, the supposititious standard, though indeed objective, being as accessible as those for example of the prudent driving of a motor car, or of the diligence required in making a ship seaworthy, or of the extent of proper inquiry into the solvency of a debtor. Moreover, since the result of the presumption is at most no more than to compel the taxpayer to disclose the facts, and since the tax itself is definitely enough determined, the whole issue is irrelevant.

■ A more plausible objection is that the tax imposed on the company bears no relation to the surtaxes on the shareholders. This was not true before 1921, until when the shareholders were themselves taxed as though members of a personal service company. Doubts apparently arose as to the validity of taxing income which the taxpayers had never received, and in 1921 it was thought safer to tax the company itself in an amount not based upon that lost. We can see no objection. While the forbidden purpose is of those who use the company, that purpose may be imputed to the company itself, since they cannot use it unless they are in control, and it can have no other than an imputed purpose anyway. Nor does this trench upon the reserved powers of the states; companies may accumulate what profits they please so long as they do not do so to defeat the fiscal policies of the United States. Their business, whose regulation is wholly for the states, does not include the manipulation of dividends to avoid taxes; by definition that has nothing to do with the normal management of their affairs. Congress in raising revenue has incidental power to defeat obstructions to that incidence of taxes which it chooses to impose.

■■ Finally as to the retroactive feature of the law. The section went into effect as of January 1, 1921, though not passed until November twenty-first of that year. Except for the fact that the added tax may be thought to be a penalty, the power is undoubted to make ordinary taxes retroactive so far. Cooper v. U. S., 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516; Brushaber v. Union Pac. R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713. Perhaps the doctrine ought not to apply to such a tax as this, if the taxpayer had no locus poenitentiæ. It had. When the Act of 1921 was passed, all companies still had six weeks in which to distribute their profits. If they did so they would comply with the statute and avoid the penalty, if it be a penalty. Whatever the original purpose, the accumulations had to last through the year, or the shareholders would pay the surtaxes. The period was long enough for distribution, and indeed companies had been advised since 1918 that the practice was regarded as an evasion. The only change was in the consequences. Thus, even though we take the added tax as a penalty, stricti juris, which we need not, the statute was not retroactive.

Order affirmed.