J. WARREN LEACH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39428. Promulgated October 19, 1953.

*Erle Pettus, Jr., Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

72

OPINION.

BLACK, *Judge:* The provision of the Internal Revenue Code providing the basis for a transferee's liability for unpaid taxes of his transferor is printed in the margin.[1] To hold a party liable as transferee in equity for a transferor's delinquent taxes it must be proved (1) that the alleged transferee received assets of the transferor, and (2) that the transferor was insolvent at the time of, or was rendered insolvent by, that transfer of assets. We have stated the elements of that liability in *R. E. Wyche*, 36 B. T. A. 414 at 418, as follows:

the mere fact of a transfer of part of its assets by a corporation to its stockholders does not establish transferee liability. A necessary item of proof in any transferee proceeding is that the taxpayer transferor was insolvent at the time of the transfer or that the transfer itself made the transferor insolvent, or that the transfer was one of a series of distributions in pursuance of complete liquidation, which left the corporation insolvent. * * *

See also *Ungerleider* v. *Commissioner*, 167 F. 2d 865 (1948). The transferee is retroactively liable for transferor's taxes in the year of transfer and prior years, and penalties and interest in connection therewith, to the extent of the assets received by him even though transferor's tax liability was unknown at the time of the transfer. *Scott* v. *Commissioner*, 117 F. 2d 36; *R. E. Wyche, supra; Coca-Cola*

---

[1] SEC. 311. TRANSFERRED ASSETS.

  (a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

    (1) Transferees.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

    \*        \*        \*        \*        \*        \*        \*

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

    \*        \*        \*        \*        \*        \*        \*

  (f) Definition of "Transferee."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

*Bottling Co.*, 22 B. T. A. 686; *Buzard* v. *Helvering*, 77 F. 2d 391; *Rubel* v. *Commissioner*, 74 F. 2d 27.

Petitioner contends that he is not liable as a transferee in regard to the distribution to him in April 1947 of the $2,200 dividend (equity in one of transferor's houses) because transferor was neither insolvent at the time of, nor did insolvency result from, that distribution. We have found as a fact that transferor was solvent both before and immediately after that distribution. Furthermore, (1) the lapse of time between that dividend distribution and the payment of the $21,000 in salaries to petitioner and the other three stockholders on October 16, 1947, (2) the fact that transferor was solvent throughout that period of time, and (3) the fact that the decision to pay those salaries was not preconceived but was reached on October 16, 1947, belies any claim that the dividend was distributed as one of "a series of distributions in pursuance of complete liquidation." *R. E. Wyche, supra*. We, therefore, sustain petitioner in this contention.

Petitioner next urges (1) that the entire $5,250 salary paid him by transferor in 1947 was reasonable and proper compensation for services actually rendered and not, as respondent claims, a distribution of assets to the extent of $2,625 (one-half of that salary); and (2) that the payment of the salary to him did not render transferor insolvent.

As regards the issue of insolvency, we have found as a fact that prior to the payment of the $21,000 in salaries on October 16, 1947, transferor had a surplus of $22,115.13. The salary payments (one-half of which the respondent claims was excessive and unreasonable) reduced that surplus to $1,115.13, which rendered the transferor insolvent and unable to pay its debts. As a result, transferor was rendered unable to pay its $3,286.74 tax deficiency, plus $164.34 negligence penalty. That this deficiency and penalty were not determined by respondent until 1951 is immaterial because, in determining a question of insolvency, liability for taxes, though unknown at the time, must be considered. *Scott* v. *Commissioner, supra; R. E. Wyche, supra.*

Petitioner argues in his brief that transferor's insolvency resulted not from the salary payments to him and Klosterman, which were entirely reasonable and proper, but rather from the unreasonable and excessive salary payments made to Wainwright and Dean (the remaining two stockholders). This, of course, is merely another way of alleging that the entire salary paid him was reasonable compensation for services rendered, which allegation is dealt with below.

The one remaining issue, therefore, is whether the $5,250 salary payment to petitioner was reasonable and not excessive compensation for services rendered as president of transferor. This is a question of fact. Moreover, the burden of proof rests upon the respond-

ent to prove his contention that half of the salary was in reality a distribution of assets.[2]

In *Mayson Mfg. Co.* v. *Commissioner*, 178 F. 2d 115, 119, the court, though recognizing that each case must stand on its own facts, enumerated basic factors to be taken into account in determining reasonableness of salary, to wit:

Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders,; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper. * * *

The presumption that salaries voted by the board of directors are reasonable and proper is of negligible weight, however, where, as here, the directors are both the sole stockholders and the employees for whom the salaries were voted. *Glenshaw Glass Co.* v. *Commissioner*, 175 F. 2d 776, certiorari denied 333 U. S. 842, affirming per curiam Memorandum Opinion of this Court; *L. Schepp Co.*, 25 B. T. A. 419, 429.

Facts were adduced at the hearing regarding petitioner's services to transferor prior to its incorporation and the beginning of its 1947 fiscal year. Petitioner's position is that those services, for which he was not paid, should be taken into consideration in determining the reasonableness of the salary received by him on October 16, 1947, shortly before the end of transferor's fiscal year on October 31, 1947. Under the facts and circumstances which we have here we cannot agree to this contention of petitioner. Transferor at no time undertook to reimburse petitioner for his preincorporation services nor was the salary distribution decided on at the October 16, 1947, meeting made with the intent to compensate petitioner for any services rendered prior to the 1947 fiscal year. Had there been such an intent W. K. Dean surely would not have received a salary equal to petitioner's since Dean did not become affiliated with transferor until November 1946, and rendered far less services after that date than did petitioner.

---

[2] Internal Revenue Code.

SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES.

(a) BURDEN OF PROOF.—In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

We consider only, therefore, whether petitioner's salary was unreasonable and excessive for services rendered during the 1947 fiscal year. In our consideration we have kept in mind the touchstones provided by the court in *Mayson Mfg. Co.* v. *Commissioner, supra.*

Transferor was organized solely for the purpose of building and selling 17 duplex-type houses on a 10-acre tract of land. The building operations were completed by the end of March 1947, and the last house was sold by June 1947. Transferor was inactive for the remainder of the 1947 fiscal year and thereafter.

During the construction period petitioner spent many mornings at the construction site checking on the progress of the work. G. W. Klosterman, however, was in direct charge of the work. Petitioner was responsible for the administrative matters connected with the development. He maintained the books and records, handled the paper work in connection with the financing of the development, purchased supplies, and signed certain contracts with subcontractors employed by Klosterman (who was the general contractor).

After construction was completed in March 1947, his major activity in regard to transferor was seeing to the sales of the houses. For this he was paid separately, receiving $3,785.73 in sales commissions at commission rates mutually agreed upon between himself and transferor. His work in that respect, therefore, is not to be considered in determining the reasonableness of the salary payment in issue. In effect, we have before us a question as to the value of petitioner's services from November 1, 1946 (the beginning of transferor's fiscal year), to about March 30, 1947, when construction was completed, a period of 5 months.

At the end of the 1947 fiscal year transferor had a surplus of $22,115.13. Of that surplus, $21,000 was divided into four equal shares of $5,250 and was distributed to petitioner and the other three stockholders in the form of a "salary" payment. No consideration appears to have been given to what the proper salaries of the stockholders should be in view of actual services rendered. On its face the payment of such salaries appears to have been but a method of distributing earnings. See *Commissioner* v. *Renyx*, 66 F. 2d 260. Petitioner admitted that he objected to this procedure, recognizing that it was improper, but maintains that the services rendered actually justified a salary of that size.

The record reveals that at least from the end of March (when construction was completed) until October 16, 1947, petitioner was working on another real estate development (Woodland) in which he, Wainwright, Dean, and Klosterman were interested. He devoted a great deal of time to Woodland and rendered the same services in respect thereto as he rendered for transferor. For those 6½ months

of services he received a salary of $2,482 and, as with transferor, commissions for sales negotiated.

We are faced here with a comparison of salaries paid petitioner for almost identical services performed during the year in question. For the 5 months of work performed for transferor petitioner received a $775 "service fee" plus the $5,250 salary in question, a total of $6,025. But for the 6½ months of work for Woodland he was paid $2,482, a considerably lesser amount. Other factors of significance are that petitioner found time to successfully administer an interest in the Cedar Hotel property (on which he earned $4,562.35 during 1947), and to engage, to some extent at least, in insurance sales and sales of heaters.

A consideration of the aforementioned facts establishes, we think, that respondent has successfully sustained his burden of proving that petitioner's salary was unreasonable and excessive in the amount of $2,625, that this amount was in effect a distribution of assets to petitioner, and that consequently petitioner is liable for transferor's unpaid taxes to that extent. Since the other three stockholders have already paid a portion of transferor's tax deficiency and penalty, thereby reducing the amount payable by petitioner, computation of petitioner's precise liability must be made. *J. P. Quirk*, 15 T. C. 709, affirmed per curiam 196 F. 2d 1022; *A. D. Saenger*, 38 B. T. A. 1295; G. C. M. 9252, X–1 C. B. 261.

*Decision will be entered under Rule 50.*