GEORGE M. NEWCOMB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44938. Filed March 10, 1955.

*Edward L. Weber, Esq.*, for the petitioner.
*Peter K. Nevitt, Esq.*, for the respondent.

956

OPINION.

LeMire, *Judge:* The issue presented is whether petitioner is liable as transferee of the assets of Lila G. Husted, deceased, for unpaid deficiencies in income tax, additions to tax, and interest, as set forth in our Findings of Fact. The extent of liability, if any exists, is limited to the value of the interest in the Health Spot Shoe Shop transferred to petitioner. *J. Warren Leach*, 21 T. C. 70; *Scott* v. *Commissioner*, 117 F. 2d 36; *Lillian Burke*, 21 B. T. A. 45. Petitioner concedes the liabilities of the transferor, but he denies that as a result of such transfers either the decedent or her estate was thereby rendered insolvent, an essential element of transferee liability. *J. Warren Leach*, *supra; Ruth Halle Rowen*, 18 T. C. 871, 881, reversed on other grounds, 215 F. 2d 641. The burden of proof of such insolvency is on the respondent. *Terrace Corporation*, 37 B. T. A. 263; sec. 1119 (a), I. R. C. 1939.

Respondent contends that the date of the transfer of the business to petitioner was November 30, 1947, the date of the decedent's death. On that date her total Federal tax liability was $21,382.91. Petitioner, on the other hand, contends that the date of transfer was June 11, 1947, the date of the agreement between himself and the decedent. On that date the latter's Federal tax liability for 1944, 1945, and 1946 was $19,588.65. We think it clear from the agreement of June 11, 1947, and the acknowledgment thereof by Health Spot Shoe Company, that the transfer was effectuated partially on June 11, 1947, and partially on November 30, 1947. The question of the decedent's solvency must be viewed therefore as of both dates.

On each of the dates under consideration, Lila G. Husted, the decedent and transferor, owned assets located in both the United States and Canada. Petitioner contends that in order to determine the decedent's solvency all assets, regardless of location, must be considered. We do not agree. With the exception of the life insurance policy, which had no cash surrender value, all of the decedent's assets in the United States were located in Michigan. Respondent, in support of his position of insolvency, relies upon the Michigan Uniform Fraudulent Conveyances Act (Mich. Stat. Ann., Title 26, Ch. 261) [1] and the

---

[1] Sec. 26.881 *Definition of terms. Section 1.* In this act "assets" of a debtor means property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets. * * *

Sec. 26.882 *Insolvency. Sec. 2.* (1) A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Bankruptcy Act (11 U. S. C. sec. 107 (1946 ed.)).[2]  In both acts it is provided that property exempt from execution is not to be considered in determining solvency in cases involving conveyances implied to be fraudulent.

We have found that as of June 30, 1947, the net worth of the business was $8,919.40.  Therefore, the total assets owned by the decedent in the United States consisted of an undivided one-half interest in the business, Health Spot Shoe Shop, with a value of $4,459.70, and, in addition, a promissory note with interest of a value of $2,266.29, and a savings bond with a value of $20.25.  These assets aggregated the sum of $6,746.24, which amount is clearly insufficient to meet the decedent's Federal tax liability at that time of $19,588.65.

On November 30, 1947, the decedent's United States assets consisted of the same promissory note with interest of a value of $2,307.92 and the savings bond of $20.25, plus the proceeds of the insurance policy in the amount of $10,000.  These assets aggregated the sum of $12,328.17, a sum clearly insufficient to meet the decedent's Federal tax liability at that date of $21,382.91.

The petitioner further argues that since transferee liability in equity is a secondary liability, and all reasonable possible remedies against the transferor must be first exhausted, the respondent has failed to do so by not pursuing his claim filed against the Canadian assets.

The record establishes that the respondent on September 27, 1948, filed a claim with the executors of the decedent's Canadian estate, which they contested, and no further action was taken by respondent. It is our opinion that the respondent is not required to pursue remedies, if any, in a foreign jurisdiction in order to have exhausted all remedies against the transferor in order to be permitted to impose transferee liability.  It is generally recognized that courts as a matter of policy decline to enforce the penal or revenue laws of a foreign jurisdiction.  See *Moore* v. *Mitchell*, 30 F. 2d 600, 603, affirmed on other grounds 281 U. S. 18; *United States* v. *Fairall*, 16 F. 2d 328; *City of Regina* v. *McVey*, 23 Ont. W. N. 32; *Canada* v. *Schulze*, 9 Scots L. T. 4.  The tax treaty between the United States and Canada does not contain any provision recognizing the right of either country to enforce its tax liabilities within the jurisdiction of the other country.

---

[2] Sec. 107.  Liens and fraudulent transfers.

(d) (1) For the purposes of, and exclusively applicable to, this subdivision (d) : (a) "Property" of a debtor shall include only his nonexempt property ; (b) "debt" is any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent ; (c) "creditor" is a person in whose favor a debt exists ; (d) a person is "insolvent" when the present fair salable value of his property is less than the amount required to pay his debts ; * * *

We do not think that if respondent had attempted to pursue any remedies in the Canadian courts he would have met with any success. The courts do not require one to do a useless act. In the absence of any authority to the contrary, we hold that the respondent has sufficiently pursued all possible remedies against the transferor so as to enable him to proceed against this petitioner as transferee.

The respondent having established a prima facie case of transferee liability, the burden of going forward shifted to the petitioner to show affirmatively why he should not be held liable. *Robinette* v. *Commissioner*, 139 F. 2d 285, certiorari denied 322 U. S. 745, rehearing denied 322 U. S. 772; *Commissioner* v. *Renyx*, 66 F. 2d 260; *Fada Gobins*, 18 T. C. 1159, affirmed per curiam 217 F. 2d 952.

Petitioner contends that he paid a fair consideration for the interest in the Health Spot Shoe Shop which decedent transferred to him. In support thereof petitioner argues that his contributions of $1,000 and $4,000, his assumption of the debts of the business, and his contribution of services represent a fair and reasonable consideration paid. The record does not establish the payment of $1,000. It appears that the sum of $4,000 was deposited by petitioner in August 1947 in order to secure the benefit of purchase discounts. Obviously, that item cannot be treated as consideration paid to the decedent. Furthermore, the $4,000 was not carried on the partnership books as an asset nor credited to petitioner's capital account until 1948. Since the tangible assets of the business on June 30 and on November 30, 1947, greatly exceeded the liabilities owing on those dates, it seems clear that the assumption of the debts did not constitute any consideration paid to the decedent.

We are not impressed with petitioner's contention that his services as manager of the partnership constituted part of the consideration for the transfer of the assets by the decedent. The agreement of June 11, 1947, contains a provision to the effect that the decedent recognizes the deep obligation owed to the petitioner for past services and as a further consideration for the petitioner entering into the partnership agreement the decedent agreed to make a will leaving all of her real and personal estate with certain specified exceptions to the petitioner, and in default of so doing the petitioner was to receive additional compensation for services rendered of $2,000. For his services rendered to the partnership he was to receive 50 per cent of the profits and the decedent's remaining undivided half interest in the partnership business upon her death. Assuming that it was the intent of the parties that petitioner's services were to be considered as part consideration for the transfers, since the petitioner has offered no proof showing the value of such services, he has failed to meet his burden on that point. Cf. *Margaret Wilson Baker*, 30 B. T. A. 188; *Fada*

*Gobins, supra.* Accordingly, we hold and have found as a fact that the transfers were without consideration.

Finally, we consider the respondent's contention that the Health Spot Shoe Shop had a going concern goodwill value of $13,936.22 based upon the formula set forth in A. R. M. 34, 2 C. B. 31.

The valuation of goodwill presents a question of fact peculiar to each individual case. The decisions demonstrate that there is no fixed formula for valuation to be applied because a business has earnings in excess of a fair return upon the value of tangible assets.

The petitioner contends that the business had no goodwill. The business was a retail store conducted in the name of the Health Spot Shoe Shop under a limited franchise granted by the Health Spot Shoe Company, the manufacturer. The contract right was terminable by either party upon 30 days' notice. The earnings were dependent not only upon the terminable franchise but the personal qualifications of the individuals managing the business. The value of a contract right of limited duration and the qualifications of one or more individuals are no part of goodwill in the ordinary sense of the term. *Maurice A. Mittelman*, 7 T. C. 1162. No goodwill has ever been carried on the balance sheet as an asset of the business. Furthermore, George E. Musebeck, president of the Health Spot Shoe Company which manufactured the shoes sold by the partnership, expressed the opinion that the business had no goodwill value. On the basis of this record we are convinced that the business in question had no goodwill value and have given no consideration to that item in evaluating the assets transferred.

Based upon all of the facts, we have found that the assets transferred to the petitioner consisted of one-half of the business on June 30, 1947, valued at $4,459.70, and the remaining one-half transferred on November 30, 1947, valued at $5,884.78, which aggregate the sum of $10,344.48. We hold that petitioner is liable as transferee to the extent of $10,344.48.

*Decision will be entered under Rule 50.*