OPINION. Black, Judge: Our attention is first directed to determination of the joint return issues raised in Docket Nos. 45015 and 45017, to wit, whether the returns filed by Charles E. Brown and Elmer L. Lauten-berger for 1942 through 1945 were, in fact, joint returns with their respective wives, Anna and Ida, thereby making the latter jointly and severally liable with their husbands for the deficiencies and fraud penalties admittedly due from Charles and Elmer for those years. The applicable provision of the Internal Eevenue Code of 1939 is printed in the margin.[5] In their brief, petitioners Anna and Ida for the first time contend that, as regards them, the 3-year statute of limitations in section 275 (a) of the 1939 Code has run for 1942 through 1945. However,» since they failed to raise that issue anywhere in the pleadings it need not be considered by us. R. G. Robinson, 12 T. C. 246, affd. (C. A. 5) 181 F. 2d 17; United Business Corporation of America, 19 B. T. A. 809, 831, affd. (C. A. 2) 62 F. 2d 754, certiorari denied 290 TJ. S. 635. On the other hand, petitioners properly pleaded, but did not press the point on brief, that in any event respondent erred in asserting them to be liable for the fraud penalties determined for 1943 through 1945. It is clear, however, that if those returns were in fact joint, the petitioners are jointly and severally liable with their husbands for the admitted fraud penalties applicable thereto, even though they personally may be innocent of any wrongdoing. Myrna S. Howell, 10 T. C. 859, affirmed per curiam (C. A. 6) 175 F. 2d 240. We come now to the question in chief, whether the returns were separate or joint. This is a question of fact in the determination of which the intent of the spouses must be considered. Myrtle O. Calhoun, 23 T. C. 4. As we stated in Elsie S. Bour, 23 T. C. 237, “there must be a mutual intent to claim the benefits of a joint return before either spouse becomes jointly and severally liable.” Respondent’s determination that the returns were joint is prima facie correct and petitioners bear the burden of proving that respondent erred in that determination. Myrna S. Howell, supra. After careful consideration of the entire record we hold that petitioners Anna and Ida have successfully borne their burden of proving that the returns filed by Charles and Elmer for 1942 through 1945 were separate returns and were neither intended to be, nor were in fact, joint returns with the respective petitioners. The facts pertaining to the filing of these returns have been fully stated in our Findings of Fact and on the strength of these facts wé made an ultimate finding that “The returns filed by Charles and Elmer for 1942 through 1945 were their separate returns; they were not intended by any of the spouses to be, nor were they, joint returns with Anna and Ida, respectively.” This finding has the effect to settle this issue in favor of petitioners and we deem it unnecessary to restate the facts upon which this holding is based. The final issues for our consideration involve the transferee liability of petitioners Arlington (Docket No. 45014) and Lillian (Docket No. 45016) for the 1942 through 1946 deficiencies and fraud penalties of their respective fathers, Charles and Elmer. The applicable provisions of the 1939 Code are printed in the margin.[6] Arlington and Lillian argued that since the deficiency notices charging them with secondary liability as transferees are predicated upon the primary “joint liability” of Charles and Anna, and Elmer and Ida, respectively, they cannot be held liable as transferees to any extent unless respondent proves that Anna (as well as Charles) and Ida (as well as Elmer) are liable for the deficiencies and penalties involved. This argument is without merit. The deficiency notices predicate petitioners’ transferee liability upon the joint and several liability of the alleged transferors, since the notices relate to deficiencies and penalties determined to be due from Charles and Anna, and Elmer and Ida, by reason of returns treated by respondent as their joint returns. Sec. 51 (b) of the 1930 Code. Consequently, the purport of those notices is that (a) since either Charles or Anna or both are primarily liable for the deficiencies and penalties involved in Docket No. 45014 and (b) since either Elmer or Ida or both are primarily liable for the deficiencies and penalties involved in Docket No. 45016, then Arlington and Lillian, respectively, are secondarily liable for those deficiencies and penalties to the extent that they are transferees (within the meaning of section 311 of the 1939 Code) of the ones primarily liable. Petitioners Arlington and Lillian bear the burden of proving that respondent erred in determining that their alleged respective trans-ferors are liable for the deficiencies and penalties involved. Sec. 1119 (a) of the 1939 Code;[7] Rule 32, Tax Court Rules of Practice; Kizzie Gordon, 27 B. T. A. 377. They have, however, been relieved of that burden as regards xlnna and Ida by respondent’s abandonment, on brief, of his determinations that they are transferees of Anna and Ida. On the other hand, petitioners have not contested respondent’s determinations of the deficiencies and penalties owed by their alleged transferors, Charles and Elmer, for 1942 through 1946. As a result respondent’s determinations in that respect are accepted as correct. We need only decide, therefore, whether, and to what extent, Arlington and Lillian are transferees of Charles and Elmer, respectively. The burden of proving transferee liability rests upon respondent. Sec. 1119 (a), sufra. To discharge the burden he must show that there was a gratuitous transfer of assets from the transferor to the alleged transferee and that the transferor was either insolvent at the time of, or was rendered insolvent by, that transfer. J. Warren Leach, 21 T. C. 70; Leetonia Furnace Co., 23 B. T. A. 979; see Terrace Corporation,, 37 B. T. A. 263, 269. In determining whether the transferor was insolvent his liability for Federal income taxes and penalties, even if unknown at the time of the transfer, must be taken into account, J. Warren Leach, supra, but his assets on hand at that time which respondent proves were of such a nature that they could not have been reached to satisfy transferor’s tax liability are not to be included in the computation. George M. Newcomb, 23 T. C. 954; see Flack’s Annotated Code of Maryland, art. 39B, sec. 1; see also Louise Noell, 22 T. C. 1035, 1043. Regarding the extent of the transferee’s liability, he is retroactively liable for the unpaid taxes and penalties of his transferor for the year of transfer and prior years, even though the transferor’s tax liability was unknown at the time of the transfer. However, his liability for such taxes and penalties does not exceed the lesser of (1) the assets received by him from the transferor; (2) the difference between trans-feror’s liability and transferor’s assets on hand at the time respondent resorts to the transferee for satisfaction of that liability (reduced by the amount of such assets which respondent proves could not be reached to satisfy transferor’s liability). Healy v. Commissioner, 345 U. S. 278, 283, 284, see footnote 16; Anne Gatto, 20 T. C. 830; Terrace Corporation, supra; George M. Newcomb, supra. Respondent seeks to hold Arlington liable for a portion of Charles’ deficiencies and penalties on the basis of certain alleged transfers of assets made by Charles on December 3 and December 11, 1951. Both before and immediately after the transactions of those dates Charles’ assets included, among other things detailed in our findings, a joint and several life estate with Anna in their residence at 5215 Old Frederick Road, Catonsville, Maryland. Charles’ joint interest in that life estate was subject to respondent’s claims for deficiencies and penalties and respondent has provided us with no reasons for his failure to levy thereon. Cannon v. Nicholas, (C. A. 10) 80 F. 2d 934; Flack’s Annotated Code of Maryland, art. 83, secs. 1, 12; Fladung v. Rose, 58 Md. 13; Eder v. Rothamel, 202 Md. 189, 95 A. 2d 860; 1 American Law of Property, sec. 2.17; see George M. Newcomb, supra. Yet there is no evidence in the record of these proceedings bearing upon the value of Charles’ joint life interest and we are unable even to hazard estimation of that value. Cf. Alfred W. Barber, 19 T. C. 600, 604. Respondent, consequently, has failed to carry his burden of proving that Charles either was insolvent before, or was rendered insolvent by, the transfers in question. Terrace Corporation, supra. Under these circumstances Arlington may not be held liable as Charles’ transferee. See Burnet v. Houston, 283 U. S. 223.[8] Respondent seeks to hold Lillian liable for a portion of Elmer’s deficiencies and penalties on the basis of certain alleged transfers of assets made on August 9, 1950, and December 14, 1951. On each of those dates Elmer’s unpaid deficiencies and penalties totaled $23,-629.98. Elmer was insolvent both immediately before and after the alleged transfers[9] and there is nothing in the record to rebut the presumption that such insolvency continued until respondent mailed the deficiency notice herein which asserted transferee liability against Lillian. Terrace Corporation, supra. Elmer and Ida owned, as tenants by the entirety, their residence at 4808 Coleheme Road, Catonsville, Maryland. On August 9, 1950, they transferred to Lillian a one-half joint tenancy interest in that property. Lillian gave no consideration for her interest; it constituted a gift to her, one-half of which (i. e., 25 per cent of the total interest therein) was from Elmer. We have found that the value of the property on the date of transfer, R. E. Burdick,, 24 B. T. A. 1297, was $16,000 and that the value of the 25 per cent interest therein which Elmer gave Lillian was, consequently, $4,000. Respondent offered no evidence directly indicating the property’s value on the transfer date (August 9, 1950), but the record does contain evidence of a bona fide negotiated sales price for the property in 1952 ($20,100) and the property’s assessed value in 1953 ($9,180). Exercising our best judgment, we have determined the property’s value on the transfer date from that evidence, bearing heavily against respondent upon whom the burden rests to prove such value. See Camp Wolters Enterprises, Inc., 22 T. C. 737; Andrew P. Solt, 19 T. C. 183. Elmer and Ida jointly owned a half interest in a mortgage debt on the Williams St. property, mentioned in our findings. On December 11,1951, Elmer received a check for $13,288.03 in payment for his and Ida’s interest therein; he endorsed the check and gave it to Ida; Ida gave it to Lillian; and, on December 14, 1951, Lillian deposited $12,788.03 of the check’s proceeds in a bank account standing in trust for her and Ida as joint owners. One-half of that deposit, or $6,394.01, constituted funds belonging to Lillian, Milholland v. Whalen, 89 Md. 212, 43 Atl. 43; Fairfax v. Savings Bank of Baltimore, 175 Md. 136, 199 Atl. 872; Walter E. Dunham, 27 B. T. A. 1068, and for which Lillian gave no consideration. We think, after considering the relationship of the parties involved and the facts and surrounding circumstances of the case, that Elmer intended to make a present gift to Lillian of that $0,394.01 portion of his interest in the mortgage debt and that Ida (tc -whom he initially gave the check received in payment of both his and Ida’s joint interests in the debt) merely served as a conduit, between Elmer and Lillian, of the $6,394.01.[10] Blanche S. Ross, 28 B. T. A. 39; Berman v. Lechner, 193 Md. 177, 66 A. 2d 392; Gurley v. Wolf, 173 Md. 393, 196 Atl. 285. Consequently, we have found that the $6,394.01 was a gift from Elmer to Lillian. Lillian contends that Elmer gave the $6,394.01 to Ida in partial payment for various loans, totaling $12,000, which Ida made Elmer for use in his business. No written record was ever made of these alleged loans nor was interest paid thereon; the only evidence thereof was Elmer’s testimony at the hearing. We are not convinced, on the basis of the record, that such loans were in fact ever made. However, even if Ida did advance $12,000 to Elmer the evidence reveals that such funds were accumulated from Elmer’s earnings over which Ida was given custody. In other words, Elmer was merely using his own accumulated earnings in the business. Consequently, even should we hold that Elmer intended to give the $6,394.01 to Ida, and that Ida independently decided to give it to Lillian, Lillian would still be subject to transferee liability thereon since neither she nor Ida gave any consideration for that sum. United States Trust Co. of New York, 16 T. C. 671, 676. In view of the above we hold that Lillian is liable, as transferee, for Elmer’s deficiencies and penalties to the extent of $10,394.01, which represents gifts to her from Elmer of (a) a $4,000 interest in the 4808 Coleherne Road property and (b) $6,394.01 of the proceeds derived from the aforementioned mortgage debt. Decisions will he entered under Rule 50. SEC. 51. INDIVIDUAL RETURNS. (b) Husband and Wife. — A husband and wife may make a single return Jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a Joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be Joint and several. No Joint return may be made if either the husband or wife is a nonresident alien or if the husband and wife have different taxable years. The status of individuals as husband and wife shall be determined as of the last day of the taxable year. [The above Is the wording of the section as effective for the taxable years 1944 and 1945. For the taxable years 1942 and 1943 the section was, in substance, the same except that it did not contain the provisions appearing immediately after the word “alien” in the next to last sentence above, and did require that the husband and wife be living together.] SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. — The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in. case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) : (1) Transferees. — The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. ******* Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Pboof. — In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner Is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax. It Is noted that respondent's failure to prove the value of Charles’ aforementioned joint life interest would also render it impossible to determine the extent of transferee liability since Charles retained that interest up to the time respondent mailed the deficiency notice to Arlington in this case and a transferee’s liability may not, as discussed above, exceed the difference between transferor’s liability and transferor’s vulnerable assets on hand at the time respondent resorts to the transferee. Healy v. Commissioner, 345 U. S. 278, 283, 284, see footnote 16; Anne Gatto, 20 T. C. 830; Terrace Corporation, 37 B. T. A. 263, 269. It is noted that on both transfer dates Elmer’s assets included : an interest, as a tenant by the entirety with his wife, in 4808 Coleherne Road, Catonsville, Maryland; and a one-third Interest in a bank account held in trust for him, Ida. and Lillian, see Milholland v. Whalen, 89 Md. 212, 43 Atl. 43; Fairfax v. Savings Bank of Baltimore, 175 Md. 136, 199 Atl, 872; Walter E. Dunham, 27 B. T. A. 1068. Under Maryland law the aforementioned do not constitute such Interests in property as may be reached by Elmer’s creditors to satisfy his separate debts, Schwarz v. United States, (C. A. 4) 191 F. 2d 618; Fairfax v. Savings Bank of Baltimore, supra; and, as a consequence, respondent could not resort to those interests in satisfaction of Elmer’s Federal tax liability. Raffaele v. Granger, (C. A. 3) 196 F. 2d 620; United States v. Hutcherson, (C. A. 8) 188 F. 2d 326. Therefore, those interests must be excluded in computing Elmer’s financial condition as of the transfer dates. George M. Newcomb, 23 T. C. 954; Louise Noell, 22 T. C. 1035, 1043. Even, however, were they included in computing Elmer's financial condition it Is clear that Elmer would still have been insolvent prior, as well ar subsequent, to the transfer dates. It was by no means unusual for Rimer to gire Ida Initial possession of the check in view of the fact that one-half of the check’s proceeds represented payment to Ida for her Interest in the mortgage debt.