T.C. Memo. 1996-541


UNITED STATES TAX COURT


ANNA LEE LOCKE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19310-94.                    Filed December 16, 1996.


Anna Lee Locke, pro se.

Jack Klinghoffer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Chief Judge:  Respondent determined that petitioner was liable as a transferee of Alexander Locke, Jr., for an income tax liability of $18,247 for 1982.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether the statute of limitations bars the assessment and collection of the transferee liability; (2) whether petitioner is liable as a transferee under section 6901; and (3) whether petitioner is an innocent spouse as to the transferee liability.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in Sacramento, California. Petitioner was the wife of Alexander Locke, Jr. (the decedent). Petitioner filed a joint 1982 Federal income tax return with the decedent. The 1982 return reported a loss of $63,583 from an investment in EXOCO Energy Partners (EXOCO) partnership. The loss was in accordance with a Form K-1 filed by EXOCO with the EXOCO return. In June 1983, respondent issued a refund to the decedent of $23,235 claimed on the 1982 return.

The decedent died testate on June 26, 1984. On June 28, 1984, an obituary was published in the local newspaper. Petitioner handled the estate administration herself.

On October 24, 1984, respondent sent a Notice of Beginning of Administrative Partnership Proceeding of the EXOCO partnership (NBAP) to "Alexander Locke, MD" at zip code 95825.

Under the will, the entire estate passed to petitioner. On or about February 19, 1985, petitioner's certified public accountant, C.S. Nicholas (Nicholas), filed a Form 4768,

Application for Extension of Time to File U.S. Estate Tax Return and/or Pay Estate Tax. The address shown on the Form 4768 was that of Nicholas. The United States Estate Tax Return, Form 706, was subsequently filed, signed by petitioner, and dated November 12, 1985. The return included a schedule of assets and deductions and listed the value of the total gross estate of the decedent as $544,856. Included in the return was a schedule of annuities that listed the value of the decedent's profit sharing plan and employee's money purchase plan as $260,715.00. After deductions, the amount listed as "Bequest, etc., to Surviving Spouse" was $530,867. The address shown on the estate tax return included zip code 95864. Sometime during 1985, petitioner's home zip code was changed by the U.S. Postal Service from 95825 to 95864.

On January 10, 1986, the Superior Court of the State of California issued an Order conveying the decedent's community property to petitioner. Petitioner represented the estate herself, acting in "Pro Per". On March 20, 1986, the Internal Revenue Service (IRS) mailed to Nicholas an Estate Tax Closing Letter for the decedent's estate showing zero estate tax due. The letter was addressed to petitioner, shown as "Anna Lee Locke, Executrix". Nicholas sent the letter to petitioner with a note stating, "This means that you are through as far as the Internal Revenue Service is concerned regarding the estate."

On March 26, 1986, respondent sent a Notice of Final Partnership Administrative Adjustment (FPAA) of EXOCO partnership to Alexander Locke, M.D., at zip code 95825. The tax matters partner for EXOCO partnership filed a petition in this Court on June 20, 1986. Attached with the petition was a copy of the FPAA and a list of the investor/partners in EXOCO. The list included Alexander Locke, M.D., at zip code 95825. The tax matters partner for the EXOCO partnership and respondent subsequently entered into a settlement agreement. Pursuant to the settlement agreement, this Court entered a decision on April 30, 1992, and the decision became final 90 days later on July 28, 1992.

Pursuant to the settlement and decision of this Court in the EXOCO partnership proceeding, an assessment of a computational adjustment in the amount of $18,247 was made as to the decedent on February 15, 1993. On July 22, 1994, a Statutory Notice of Transferee Liability for the assessed amount of the decedent's liability plus interest was mailed to petitioner.

OPINION

Respondent contends that petitioner, as transferee of the decedent, is liable for an amount equal to the decedent's 1982 income tax liability and interest.

Petitioner asserts numerous and varied theories under which she claims that she is not liable as a transferee. The theories can be categorized as those that relate primarily to the income

tax liability and those that relate primarily to the transferee liability.

As a general rule, the taxpayer bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In a transferee liability case, however, respondent must prove all of the elements of transferee liability except that she does not have the burden of proving that the transferor was liable for the tax. Sec. 6902(a); Rule 142(d).

The Decedent's Liability

The tax liability of the decedent arose from a computational adjustment that reflected the treatment of a partnership item arising from the decedent's investment in the EXOCO partnership. To the extent that petitioner would challenge that liability, this Court lacks jurisdiction. It is well settled that the Court cannot decide partnership items in a deficiency proceeding relating to nonpartnership items. See Carmel v. Commissioner, 98 T.C. 265, 267 (1992); Trost v. Commissioner, 95 T.C. 560, 563 (1990); Maxwell v. Commissioner, 87 T.C. 783, 788 (1986). Congress enacted audit and litigation procedures for certain partnerships under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402, 96 Stat. 648. TEFRA created a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. A partner's tax liability attributable to partnership items is determined at the partnership level, separate from the

proceedings for determining deficiencies attributable to nonpartnership items. Secs. 6221, 6230(a). The conference report, H. Conf. Rept. 97-760, at 611 (1982), 1982-2 C.B. 600, 668, states:

> Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner's tax liability attributable to nonpartnership income, loss, deductions, and credits. Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.

In Maxwell v. Commissioner, supra at 787-788, we examined the legislative history and statutory pattern of the TEFRA provisions and stated:

> the portion of any deficiency attributable to a "partnership item" cannot be considered in the partner's personal case involving other matters that may affect his income tax liability. The "partnership items" must be separated from the partner's personal case and considered solely in the partnership proceeding. * * *

In this transferee liability case, as in a proceeding for redetermination of a deficiency, we lack jurisdiction to adjudicate the decedent's liability for the computational adjustment.

Petitioner argues that her receipt of an Estate Tax Closing Letter showing no tax due with regard to the decedent's estate tax return precludes respondent from issuing a notice of transferee liability in regard to the liability arising from the

decedent's partnership item.  Petitioner's argument is unsupported by law and is without merit.  There is no relationship between the estate tax liability and the amount at issue here, although the estate tax return is relevant for reasons discussed below.

Petitioner also argues that respondent is estopped from assessing a computational adjustment in respect of the 1982 return because respondent had previously issued a refund for 1982.  A refund, however, is not binding on respondent in the absence of a closing agreement, valid compromise, or final adjudication.  Meridian Mut. Ins. Co. v. Commissioner, 44 T.C. 375, 379 (1965), affd. 369 F.2d 508 (7th Cir. 1966).  Petitioner relies on Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962), affg. in part and revg. in part 32 T.C. 998 (1959), affg. in part and revg. in part First W. Bank & Trust Co. v. Commissioner, 32 T.C. 1017 (1959), to support her assertion of estoppel.  But the doctrine of estoppel is applied against the Government "with the utmost caution and restraint".  Kronish v. Commissioner, 90 T.C. 684, 695 (1988) (quoting Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987)).

In Schuster, a bank received information of a determination by the Commissioner that the corpus of a trust was not to be included in a taxpayer's gross estate.  The bank, in reliance on the information, distributed the trust corpus.  The Commissioner subsequently mailed a notice of transferee liability to the bank,

as trustee of the trust. The Court of Appeals held that the Commissioner was estopped from asserting the liability of the bank because the bank had distributed the corpus in reliance on the Commissioner's determination, and the bank would have had to pay the liability out of the bank's funds. Schuster v. Commissioner, 312 F.2d at 318. The closing letter issued to the decedent's estate related solely to the estate tax.

Here, the Commissioner has done no about-face, as in Schuster, i.e., petitioner's liability as transferee does not arise in respect to any estate tax owed by the decedent's estate. Rather, her liability is for the decedent's income tax, as to which the closing letter was silent. There is accordingly no showing of detrimental reliance on her part comparable to that incurred by the bank in Schuster.

Petitioner testified that she did not receive the NBAP or the FPAA and offered several theories to support her testimony. She claims that the IRS used an incorrect zip code; the IRS failed to change the name on the NBAP and FPAA to her name and incorrectly used the decedent's name; and a change of address had been submitted to the United States Postal Service by the person that had acquired the decedent's medical practice. She also notes that her son lived with her and had the same name as the decedent. Petitioner argues that the notices were invalid on the ground that they were mailed to the wrong zip code and addressed to the decedent and not to petitioner.

Section 6223(c) requires that, for purposes of mailing an NBAP and FPAA, respondent use the information on the partnership return or use specific information contained in a notice submitted in writing to the IRS in accordance with regulations. Sec. 6223(c); sec. 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6784 (Mar. 5, 1987). Petitioner testified that she did not submit the required notice under the regulations that would have instructed the IRS to change a name or a zip code. Therefore, respondent properly mailed the notices to the address of the decedent as shown on Schedule K-1 of the partnership return, which used the old zip code. Additionally, there is neither evidence nor reason to believe that an outdated zip code prevented mail delivery.

Petitioner argues that respondent had a duty to take into account information about the decedent's death that was printed in the newspaper or contained in the decedent's estate tax return. Incorporation by reference of information contained in a document that has not been furnished to the IRS in accordance with the regulations will not be given effect for purposes of 6223(c). Sec. 301.6223(c)-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6784 (Mar. 5, 1987). Nor is the IRS required to search its records for such information. Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs, 52 Fed. Reg. 6784 (Mar. 5, 1987); see Crowell v. Commissioner, 102 T.C. 683, 692-693 (1994).

Petitioner testified that a change of address in the decedent's name was submitted to the United States Postal Service and that she never received the NBAP or FPAA. Petitioner argues that, had the notices been addressed to her, she would have received them. Petitioner's assertion that mail addressed to Alexander Locke, M.D., was not delivered to her home was contradicted by petitioner's own testimony. She testified that she and her son, also Alexander Locke, M.D., received an "extremely high volume of mail". Nonetheless, petitioner failed to provide the IRS with additional information in a manner prescribed by the regulations. The notices that were mailed to the address of the decedent as shown on the partnership return were valid under these circumstances. Petitioner and her husband having filed a joint tax return, notice to him is deemed notice to her unless she instructed the IRS to send her a separate notice, which she evidently never did. Olson v. Commissioner, T.C. Memo. 1996-385; see sec. 301.6231(a)(2)-1T(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).

Petitioner contends that the partnership item was converted into a nonpartnership item because she did not receive the NBAP or FPAA and, therefore, the statute of limitations for the partnership item does not apply and the period of limitations for a nonpartnership item had expired prior to assessment. Section 6231(b) lists the events that change partnership items to

nonpartnership items. Death of the partner is not listed among the events.

The statute of limitations for partnership items under TEFRA is set forth in section 6229. Section 6229 provides that the period for assessment is 3 years from the later of (1) the date on which the partnership return for the taxable year was filed or (2) the last day for filing such return for such year (determined without regard to extensions). Sec. 6229(a). However, under section 6229(d), if a notice of FPAA is mailed to the tax matters partner:

> the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended--
>
> > (1) for the period during which an action may be brought under section 6226 (and, if an action with respect to such administrative adjustment is brought during such period, until the decision of the court in such action becomes final), and
> >
> > (2) for 1 year thereafter.

Section 6226 states:

> (a) Petition by Tax Matters Partner.--Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with--
>
> > (1) the Tax Court * * *

The statute of limitations for assessment of transferee liability under section 6901(c) is as follows:

(c) Period of limitations.--The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) Initial transferee.--In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor.

The FPAA was sent to the decedent and the tax matters partner of EXOCO on March 26, 1986. The tax matters partner filed a petition with this Court on June 20, 1986. The decision of this Court was entered pursuant to a settlement among the parties to the action on April 30, 1992, and became final 90 days later. An assessment in the amount of $18,247 was made against the decedent on February 15, 1993. The statutory notice of transferee liability for the assessed amount plus interest was mailed to petitioner on July 22, 1994. The assessment is not time barred, nor is petitioner's liability as transferee.

Petitioner has advanced other arguments with regard to the partnership item. She contends, for example, that she was precluded by the absence of notice from negotiating a settlement offered to other partners. The assessment, however, was made based on the decision entered pursuant to the settlement reached in the partnership proceeding. Other arguments related to the decedent's investment in EXOCO cannot be addressed in this proceeding for reasons set forth above.

Transferee Liability

Petitioner's remaining claims are that respondent has failed to meet her burden as to the elements of transferee liability and that petitioner is an innocent spouse and should not be responsible for the transferee liability.

Respondent contends that she has satisfied her burden of proving the elements of transferee liability and that petitioner cannot assert here an innocent spouse defense.

Section 6901(a)(1)(A)(i) authorizes the assessment of transferee liability in the same manner as the liability for income taxes.  This provision does not create a new liability but rather provides a summary remedy for enforcing the existing liability of the transferor.  Coca-Cola Bottling Co. v. Commissioner, 334 F.2d 875, 877 (9th Cir. 1964), affg. 37 T.C. 1006 (1962); Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). The term "transferee" includes donee, heir, legatee, devisee, and distributee.  Sec. 6901(h).  The existence and extent of transferee liability is a question of State law.  Commissioner v. Stern, 357 U.S. 39, 45 (1958); Scott v. Commissioner, 70 T.C. 71, 79 (1978).  Because the transfers were made in California, California Civil Code section 3439.05 applies.  Cal. Civ. Code sec. 3439.05 (West 1970 & Supp. 1996).  In order to establish transferee liability under California Civil Code section 3439.05, respondent must establish:

(1) The decedent owed a debt to the IRS;

(2) the claim of the IRS arose before the transfer was made;

(3) the decedent (or the decedent's estate) made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and

(4) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

Additionally, a transferee cannot be held liable for the tax of a transferor beyond the value of the assets received from the transferor. Yagoda v. Commissioner, 39 T.C. 170, 185 (1962), affd. 331 F.2d 485 (2d Cir. 1964). Therefore, respondent must prove the actual value of the assets received rather than merely showing that petitioner received assets of some value. Moran v. Commissioner, 45 T.C. 528, 529-530 (1966); Scott v. Commissioner, T.C. Memo. 1986-566.

Respondent contends that the decedent owed respondent a debt based on the decedent's liability from the EXOCO partnership. Petitioner argues that the decedent did not owe a debt to the respondent because the respondent violated the procedural requirements of TEFRA and therefore the notice was invalid. As discussed above, the IRS did not violate the procedural requirements of TEFRA, the notice was not invalid, and, in accordance with the final decision of this Court in the partnership proceeding, which gave rise to the computational adjustment assessed against the decedent, the decedent owed a debt to the IRS.

Respondent contends that the claim arose prior to the transfer because the liability accrued on the due date of the decedent's income tax return for 1982. Petitioner asserts that the claim arose after the transfer because no definitive partnership-related liability was determined at the time of the transfer. Petitioner further asserts that post-1984 case law was not yet determined and that it was that case law that provided the groundwork for this Court's decision which imposed the partners' tax liability. Neither of these assertions has merit. The liability for the decedent's 1982 income tax accrued on April 15, 1983, the due date of the return. Swinks v. Commissioner, 51 T.C. 13, 17 (1968); see O'Sullivan v. Commissioner, T.C. Memo. 1994-17; LaMothe v. Commissioner, T.C. Memo. 1990-63. The transfers took place on January 10, 1986, after the decedent's death. Although the transfer must occur after the tax liability accrues, the tax need not be assessed at the time of the transfer. See O'Sullivan v. Commissioner, supra; LaMothe v. Commissioner, supra. "A transferee is liable retroactively for the transferor's taxes and additions to tax in the year of the transfer to the extent of assets received from the transferor, even though the tax liability of the transferor was unknown at the time of the transfer." Swinks v. Commissioner, supra at 17.

Respondent contends that petitioner received the assets of the decedent's estate without giving a reasonably equivalent value in exchange. Respondent relies on the value of the estate

as shown on the decedent's estate tax return.  Respondent further contends that, because petitioner was the executrix of the decedent's estate and signed the estate tax return that listed the value of the total gross estate as $544,856, petitioner is estopped from asserting a different estate value.

Petitioner asserts that the transfer was for a reasonably equivalent value because the items transferred to her from the decedent consisted of liabilities in excess of assets. Petitioner testified that the values on the estate tax return were incorrect, the items were subject to encumbrances, and the values were artificially inflated so that she could receive a higher step-up in basis.  The values submitted by petitioner on the estate tax return are an admission by petitioner, and lower values cannot be substituted without cogent proof that the reported values were erroneous.  Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989).  The Sacramento County tax assessment offered by petitioner is insufficient to establish the fair market value of residential property because there is no evidence of the manner in which the assessed value was determined.  Residential property assessments in California are limited by law and not necessarily based on fair market value. Cal. Const. Code art. 13A, sec. 2(a) (West 1996).  Likewise, petitioner's unsupported testimony as to the value of other items is speculative and insufficient.  Petitioner has failed to produce any evidence that would overcome the admission and

establish a different value for the items on the estate tax return.

Because the decedent's entire estate was transferred to petitioner upon the decedent's death, the estate became insolvent as a result of the transfer.

Respondent has satisfied her burden and established transferee liability. Accordingly, petitioner is liable for the amount of the deficiency plus any allowable interest to the extent that it does not exceed the amount the decedent transferred to petitioner. Yagoda v. Commissioner, 39 at 185. Notwithstanding the items that petitioner attempted to revalue, petitioner's undisputed receipt of the amounts listed as annuities in the decedent's estate tax return would have provided petitioner with funds exceeding petitioner's transferee liability. Because the value of the items transferred exceeds the transferee liability, petitioner is liable for the entire amount determined. Yagoda v. Commissioner, Id. at 185; Brown v. Commissioner, 24 T.C. 256, 267 (1955).

Finally, petitioner asserts that, if she is liable as a transferee, she should be relieved of her liability because she is an "innocent spouse". Petitioner argues that it is inequitable to hold her responsible for the amounts due, particularly for the interest.

Respondent asserts that the "innocent spouse" defense is not available in a transferee liability case. Respondent further

asserts that it is not inequitable to hold petitioner liable and that petitioner could have taken action to prevent the interest from accruing and chose not to do so.

There is a distinction between a liability as a transferee and as a taxpayer. Construing the procedural provisions of the Revenue Act of 1926, ch. 27, 44 Stat. 9, relating to taxpayers and transferees, this Court stated:

> The two liabilities are separate and distinct, arise from different states of fact and are based upon entirely different theories. They present two distinct causes of action upon either of which it would naturally be assumed proceedings might be maintained independently. * * * [Michael v. Commissioner, 22 B.T.A. 639, 642 (1931), affd. 75 F.2d 966 (2d Cir. 1935); emphasis added.]

New York Trust Co. v. Commissioner, 26 T.C. 257, 261 (1956); Milk Bottle Exch., Inc. v. Commissioner, 43 B.T.A. 33, 36 (1940). That the same person appears in different capacities does not call for a different result. United States v. Floersch, 276 F.2d 714 (10th Cir. 1960); New York Trust Co. v. Commissioner, supra at 261.

Section 6013(e) relieves a taxpayer of liability arising from the filing of a joint return. The section provides:

> (e) Spouse Relieved of Liability in Certain Cases.--
>
> (1) In general.--Under regulations prescribed by the Secretary, if--
>
> (A) a joint return has been made under this section for a taxable year * * *

Transferee liability is established by State law elements as set forth above.  The filing of a joint return by the transferee and the transferor is not an element.  Petitioner's status as a joint filer with the decedent for the original income tax liability is immaterial to the assertion of the transferee liability.  Transferee liability and the liability arising from the joint return are separate causes of action.  Section 6013(e) only provides for relief from liability imposed upon a spouse by virtue of the filing of a joint return.  Because a transferee's liability does not arise by the filing of a joint return, the innocent spouse defense cannot be asserted to relieve petitioner of transferee liability.  United States v. Shanbaum, 10 F.3d 305, 315-316 (5th Cir. 1994).

As to petitioner's assertion that it is inequitable to hold her liable, we are not persuaded.  With transferee liability, the petitioner-transferee is not paying the tax or interest with her own funds.  This is ensured by the limit on the liability of the transferee to the extent of the amounts transferred by the transferor.  Yagoda v. Commissioner, supra at 185; Brown v. Commissioner, supra at 267.  Had there been no transfer, the decedent would have paid the liability from his assets.  If the decedent died after paying the tax liability, the transferee would have received the estate less the amount of the liability.  Thus, whether the amount of liability is removed from the estate prior to the transfer or after the transfer, the transferee would

have received the same amount.  It is not inequitable to hold
petitioner liable as a transferee.

<u>Decision will be entered
for respondent</u>.