Harvey W. PETERS, Keith Rapsey, David V. Uihlein, I. Andrew Rader and Vincent R. Shiely, as Trustees of The Margaret Loock Trust; The Caroline D. Bradley Life Trust; and The Allen-Bradley Foundation, Inc.

v.

The UNITED STATES.

Nos. 426–77, 427–77.

United States Court of Claims.

June 18, 1980.

Harvey W. Peters, pro se and attorney of record, for plaintiffs; Hughes, Hubbard & Reed, David R. Tillinghast and Karin Greenfield-Sanders, New York City, of counsel.

Donald P. Lan, Jr., Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D.C., of counsel.

Before COWEN, Senior Judge, and NICHOLS and KUNZIG, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

These consolidated suits for refund of excise taxes imposed under §§ 507 and 4940 of the Internal Revenue Code of 1954, *as amended*, (the "Code"), 26 U.S.C. §§ 507, 4940, *come to us on cross-motions for sum-mary judgment.* We are thus drawn in to the provisions of the Tax Reform Act of 1969, 26 U.S.C. §§ 4940, *et seq.*, relating to "private foundations," a term new with that Act.*

On December 27, 1945, Harry L. Bradley created five trusts, one of which was the Margaret Loock Trust ("Loock Trust"). While the five trusts were created under a single trust agreement ("ML Trust Agreement"), the trusts were separate and distinct entities. Each trust named an individ-

ual primary beneficiary and successor beneficiaries. All successor beneficiaries were persons related to the original beneficiaries with one exception. The successor beneficiary of the Loock Trust was the Lynde Bradley Foundation, Inc. (subsequently renamed and hereinafter referred to as the "Allen-Bradley Foundation" or "Foundation").

The five trusts were identically funded by a gift of 5,000 shares of common stock in the Allen-Bradley Company to each and by sale of 1,100 shares of the same stock to each. One of Mr. Bradley's frankly stated purposes was to perpetuate family control of that company. With common trustees, they exercised control of the company and this was a main purpose behind Mr. Bradley's scheme.

Of the five trusts discussed above, only the Loock Trust is at issue in these cases. Under the terms of that trust, the trustees were authorized and directed, after providing for the payment of expenses and the reduction of any principal indebtedness, to pay so much of the trust's income as they, in their discretion, deemed wise to Margaret Loock, the primary beneficiary. Upon her death the trustees were directed to pay so much of the trust's income as they deemed wise to the Allen-Bradley Foundation. The corpus was to be distributed to the Foundation at the termination of the Loock Trust, thirty years after the death of the survivor of seven named individuals, five of whom are still living.

The Foundation is, and at all times has been, an organization exempt from federal taxation. By reason of the transfers of stock to the Loock Trust, Mr. Bradley claimed charitable deductions on his amended gift tax return and on his 1945 federal income tax return. The deduction was for the value of the remainder interest in the Foundation.

In 1951, Caroline D. Bradley, sister-in-law of Harry L. Bradley, established three trusts. One of those, the Caroline D. Brad-

---

* Since the statutes and regulations that the parties refer to in these cases run to over 90 pages, we ask the reader to have the Code and regula-tory materials before him and refer to them as such material is cited.

ley Life Trust ("Bradley Trust"), is at issue in these cases. The Caroline D. Bradley Life Trust was funded by transfer of 1,600 Allen-Bradley Company shares from Caroline D. Bradley, the settlor and immediate beneficiary. Like the Loock Trust, the successor beneficiary and recipient of the corpus upon the trust's termination was the Foundation. The trustees of the Caroline D. Bradley Life Trust were the same as those of the Loock Trust. Both trusts were subject to Wisconsin law.

Caroline D. Bradley died on December 30, 1954, at which time the Foundation succeeded to her status as income beneficiary of the Bradley Trust. Margaret Loock died on May 18, 1972, and the Foundation became the income beneficiary of the Loock Trust.

In late 1974, the trustees of both trusts decided to pay the 4 percent excise tax imposed by § 4940 of the private foundation provisions without admitting liability thereunder. The Margaret Loock Trust paid $91,828.32 in § 4940 tax and $2,691.69 in interest. The Caroline D. Bradley Trust paid $47,194.91 in § 4940 tax and $3,527.68 in interest.

In 1975, the trustees of the Loock Trust filed a Notice of Termination of Private Foundation Status with the Internal Revenue Service, effective December 31, 1975. As required for termination, the Loock Trust paid a tax under § 507. The amount so paid was $1,499,893.89. Plaintiffs seek refund of all of the taxes described above.

On December 22, 1976, the Caroline D. Bradley Life Trust was terminated by order of the County Court, Probate Division, for Milwaukee County, Wisconsin, and all of its assets were distributed to the Foundation. Wisconsin law has been amended to permit this. Wisc. Laws ch. 66, § 31 (1971).

Although the trusts were not tax-exempt during the years at issue, both were currently distributing their income to the Foundation, a tax-exempt organization. These distributions were reported by the trusts as distributions to a beneficiary under § 661 of the Code rather than as charitable contributions under § 642(c).

As part of the Tax Reform Act of 1969, a series of provisions was enacted to correct perceived abuses of charitable entities, for example, to prevent their use to perpetuate family control of business corporations. One problem was in the use of nonexempt trusts to avoid certain restrictions which had already been applied to tax-exempt charitable entities. The provisions of § 509 define an entity, the "private foundation," which had not formerly existed under the Code. Some, but not all, charitable trusts are private foundations. Section 4947 brings certain trusts not covered by § 501(a) within the definition of a private foundation.

Section 4947 provides:

(a) Application of tax

(1) Charitable trusts

For purposes of part II of subchapter F of chapter 1 (other than section 508(a), (b), and (c)) and for purposes of this chapter, a trust which is not exempt from taxation under section 501(a), all of the unexpired interests in which are devoted to one or more of the purposes described in section 170(c)(2)(B), and for which a deduction was allowed under section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), or 2522 (or the corresponding provisions of prior law), shall be treated as an organization described in section 501(c)(3). For purposes of section 509(a)(3)(A), such a trust shall be treated as if organized on the day on which it first becomes subject to this paragraph.

Section 4947(a)(2) defines a different entity, the "Split-Interest Trust," as trusts "*not* all of the unexpired interest in which are devoted to [charitable purposes]." (Emphasis supplied.) The split-interest trust is subject to some but not all of the private foundation provisions.

If a trust comes within the provisions of § 4947(a)(1), certain excise taxes may be imposed by §§ 4940 through 4945. Section 4940 imposes an excise tax on the net investment income of a private foundation at

the rate of 4 percent for the years here at issue for the purpose of funding the auditing and enforcement of the private foundation provisions. Section 4941 imposes a 5 percent tax on the amount involved in a transaction between a private foundation and certain related "disqualified persons." If the "self-dealing" transaction is not corrected after notice from the Commissioner of Internal Revenue that the § 4941 tax is due, an additional 200 percent tax is imposed on the amount of the transaction.

A minimum distribution requirement is imposed by § 4942 through assessment of a 15 percent tax on the amount by which the greater of (1) the net income of the private foundation, or (2) 5 percent of the fair market value of the assets of the private foundation exceeds the amount actually distributed to charity. In the event that the private foundation fails to correct the shortfall in charitable distributions within 90 days of notice from the Commissioner, a 100 percent tax is imposed on the shortfall.

Section 4943 taxes "excess business holdings," the amount by which the shares held by a private foundation would, if combined with shares held by disqualified persons, exceed 20 percent of the voting stock of a single corporation. The initial tax is 5 percent of the excess business holdings. An additional 200 percent tax is imposed if the condition goes uncorrected after notice.

Sections 4944 and 4945 impose taxes on investments which jeopardize a private foundation's charitable purpose and on certain other expenditures, political contributions or lobbying expenditures for example.

■ Our first inquiry is whether the subject trusts were private foundations during the years in issue. That determination is based on the language of section 4947(a)(1) of the Code.

Plaintiff initially contends that, as a general matter, the private foundation provisions were not intended to apply to plaintiff trusts, as evidenced by language from the Senate Report:

If a nonexempt charitable trust were not subject to many of the requirements and restrictions imposed on private foundations, it would be possible for taxpayers to avoid these restrictions by the use of nonexempt trusts instead of private foundations. [S.Rep. No. 91–552, 91st Cong., 1st Sess. 93, *reprinted in* [1969] U.S.Code Cong. & Admin.News, pp. 2027, 2123.]

Plaintiffs assert that since the trusts were established before passage of the private foundation provisions, there was no potential for the abuse referred to in the quotation. Furthermore, no abuse was possible because, if the private foundation provisions were inapplicable to the trusts, the Allen-Bradley Foundation is covered by those provisions nevertheless.

Plaintiff's contentions are not persuasive, as a review of the law in this area makes clear. Before passage of the private foundation provisions, Congress had imposed restrictions relating to tax-exempt foundations. *See* Revenue Act of 1950, ch. 994, § 331, 64 Stat. 906. Ever vigilant tax planners had avoided these restrictions through the use of nonexempt trusts as conduits to pass income to tax-exempt foundations. The tax result was the same but the restrictions were avoided. The private foundation provisions of the Tax Reform Act of 1969 expanded and strengthened the restrictions on tax-exempt private foundations and for the first time brought nonexempt trust into the coverage of those provisions. In sum, the provisions were remedial in nature and directed toward correcting preexisting abuses.

The fact that the Allen-Bradley Foundation is covered by the provisions clearly does not prevent the abuses targeted by the Tax Reform Act of 1969. The Foundation had been covered by the earlier provisions deemed by Congress to be inadequate in part for failure to prevent the sort of arrangement here present.

Plaintiffs next turn to the specific language of § 4947(a)(1). It is undisputed that plaintiff trusts are "not exempt from taxation under section 501(a)," the first of three requirements for § 4947(a)(1) to apply. Plaintiffs attempt to avoid the reach of the

section on the grounds that the trusts are not within the second and third requirements.

Plaintiffs contend that the trusts were not devoted to charitable purposes but rather that their purposes were to hold Allen-Bradley Company shares and distribute income to beneficiaries. In so arguing, plaintiffs seem to urge that the inquiry is into whether the settlors' intent was charitable. A mere reading of the language of the provision refutes plaintiffs' view. The relevant clause reads:

> * * *, [A]ll of the unexpired *interests* in which are devoted to one or more of the purposes described in section 170(c)(2)(B), * * *. [Emphasis supplied.]

The inquiry is simply into the nature of the beneficiary or beneficiaries of the unexpired interests. In the present case, for the tax years at issue the sole beneficiary of the unexpired interests was the Allen-Bradley Foundation, a § 170(c)(2)(B) organization.

Finally, plaintiffs argue that the trusts do not meet the third test of § 4947(a)(1) which states:

> * * * [A]nd for which a deduction was allowed under section * * * 2055 * * * or 2522 (or the corresponding provisions of prior law) * * *.

It has been stipulated that Harry Bradley took a charitable deduction under the predecessor to § 2522 for the value of the remainder interest in the Foundation when he placed the Allen-Bradley Company shares in the Loock Trust. It has also been stipulated that upon the death of Caroline Bradley, her estate claimed a charitable deduction under § 2055 of the Code for the Foundation's remainder interest in the Caroline D. Bradley Trust.

Plaintiffs argue that the three requirements of § 4947(a)(1) are so intimately related that the third phrase must be read to require that the charitable deduction must have been allowed due to the charitable nature of the trusts, not the charitable nature of the beneficiary. Since the deductions were allowed for the remainder interest in the Foundation, not the trusts, the trusts, they say, are not within the requirement.

Plaintiffs' reading is exceedingly strained. The natural reading is that there must be amounts *in trust* for which a charitable deduction was allowed. Clearly that is the case here. This conclusion is supported by Example No. 2 to Treasury Regulation 53.4947–1(b)(ii). Furthermore, since § 4947(a)(1) acts on *nonexempt* charitable trusts, no charitable deduction could have been claimed for contributions to and for the sole benefit of the trusts.

In sum, the plain language of § 4947(a)(1) was intended to and does bring these trusts within the private foundation provisions. And it seems obvious this result is well within the congressional purpose.

We next direct ourselves to plaintiffs' contention that even if the private foundation provisions apply by their terms to the Loock and Bradley Trusts, such application would be contrary to the due process clause of the fifth amendment. In making their constitutional argument, plaintiffs challenge "the entire statutory scheme" of the private foundation provisions as applied to them. They emphasize §§ 4942 (the minimum distribution requirement) and 4943 (the excess business holdings provision) as threats frustrating the legitimate intent of the settlors.

■ The biggest flaw in plaintiffs' constitutional argument is that the trusts have paid no taxes under § 4942 or § 4943. Nor are the private foundation provisions so interdependent that the sections must stand or fall as a whole. Since no refund is claimed under either § 4942 or § 4943, and no authority exists to render declaratory judgments in this area, we have no jurisdiction to entertain plaintiffs' challenges to those provisions. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed. 114 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

■ Taxes have been paid and refunds sought under §§ 4940 and 507. It is not entirely clear whether plaintiffs would chal-

lenge the constitutionality of those provisions standing alone. If so, such challenge would be unavailing. Those sections are neither retroactive in application nor confiscatory. Under § 4940, the taxable event was the receipt of investment income by the trusts all of which was received after passage of the taxing statute. As to § 507, the taxable event was the voluntary termination of private foundation status, a post-passage event. While the § 507 tax is, in part, measured by events which predate passage of the tax, that does not make the tax retroactive. The prior tax benefit being the measure of the tax, the effect of § 507, where applicable, is to restore the situation to what it would have been had charitable deductions not been taken as they were in the first place, though recognizing certain deductions that could have been taken. We think Congress could reasonably have thought this necessary to undo evils caused by avoidance of the policy of prior law, legal though it then was. Not to recapture any of the benefit would perpetuate the advantage gained by use of private foundations or trusts similarly treated, over others who owned and operated commercial businesses in the conventional way, using capital contributed in the conventional manner. The question then is, not whether to allow recapture, but how much? We are shown nothing to persuade us the recapture, to the extent provided for (as to which see below) is arbitrary, unreasonable, or confiscatory, in light of the legitimate objective of the Congress. The plaintiffs could have mitigated the taxes considerably, after the 1969 Act passed, by yielding up the control of the Allen-Bradley Company, which is what Congress wished to bring about. There is nothing in the Constitution that prevents the Congress from effectuating its economic policies by taxing more heavily taxpayers whose acts frustrate those policies, than it does taxpayers whose acts further them.

It should be noted that the Loock Trust could have avoided the impact of the § 507 tax entirely. This could have been done by selling the Allen-Bradley stock and distributing the proceeds to the Foundation under § 507(b)(2). Had the Loock Trust taken these actions in 1972, even the § 4940 tax could have been avoided. The Bradley Trust did avoid the § 507 tax and could have avoided the § 4940 tax by obtaining its court order in 1969. Thus, even if the taxes otherwise might arguably have been viewed as a penalty and retroactive, taxpayers were provided a *locus poenitentiae*. *United Business Corp. of America v. Commissioner*, 62 F.2d 754 (2d Cir. 1933).

It remains to be determined what § 507 tax must be paid by the Margaret Loock Trust as the price for terminating its private foundation status. The tax imposed by § 507(c) is the lesser of "(1)  *  *  * the aggregate tax benefit resulting from the § 501(c)(3) status of such foundation, or (2) the value of the net assets of such foundation." "Aggregate tax benefit" is defined by § 507(d) as the sum of three elements. They are, (1) the tax reduction enjoyed by substantial contributors as a result of their contributions to the foundation [507(d)(1)(A)]; (2) in the case of a trust, the increase in taxes paid had the "  *  *  * deductions under section 642(c) been limited to 20 percent of the taxable income of the trust (computed without the benefit of section 642(c) but with the benefit of section 170(b)(1)(A)," [507(d)(1)(B)]; and (3) interest on the above [507(d)(1)(C)].

█ Plaintiffs' first argument goes to that portion of the § 507 tax which represents a recoupment of the benefits received by the substantial contributors. Section 507(d)(1)(A). In the case of the Loock Trust, that portion of the aggregate tax benefit was the reduction in taxes enjoyed by Harry L. Bradley on his 1945 income tax return and on his amended gift tax return. The amounts of those deductions were calculated on the basis of an Internal Revenue Service table yielding the actuarial value of the remainder interest in the Foundation. Plaintiffs contend that no amount is included under § 507(d)(1)(A) as a result of those deductions because the deductions resulted from a contribution to the Foundation, not to the Loock Trust. We have effectively decided this issue in the context of our

determination of private foundation status under § 4947. Where the statute reads "(A) the aggregate increases in tax * * which would have been imposed with respect to all substantial contributors *to* the foundation if deductions for all contributions made by such contributors *to* the foundation * * * had been disallowed," [emphasis supplied], plaintiffs would have us read "for the benefit of" in place of the word "to." Concededly, no charitable deduction was taken for a contribution for the benefit of the Loock Trust, nor could a deduction have been taken. The deduction was taken for a contribution *to* the Loock Trust and that is all that is required by § 507(d)(1)(A).

Plaintiffs' central argument under § 507(d)(1)(B)(ii) is that the Loock Trust has received no tax benefit under § 642(c), the prerequisite to imposition of that portion of the § 507 tax. Plaintiffs' reasoning for this assertion is that the Loock Trust, as a conduit distributing its income currently, would not have paid any tax regardless of the nature of its beneficiary by reason of § 661. Therefore, no benefit was enjoyed by the Loock Trust by reason of its charitable nature.

Plaintiffs' argument is not correct. While the Loock Trust claimed deductions under § 661(a) on its returns for the years at issue, plaintiffs do not appear to dispute that reliance on § 661(a) was erroneous. It cannot be doubted that the distributions of income by the Loock Trust to the Foundation were deductible under § 642(c), the unlimited charitable deduction accorded a complex trust. It can also not be questioned that where an unlimited charitable deduction is available under § 642(c), amounts qualifying for that deduction do not come within § 661. This is so under the plain language of § 663(a)(2) which states:

   (a) Exclusions

     There shall not be included as amounts falling within section 661(a) or 662(a)—

      .*    *    *    *    *    *

   (2) Charitable, etc., distributions

     Any amount paid or permanently set aside or otherwise qualifying for the de-

duction provided in section 642(c) (computed without regard to sections 508(d), 681, and 4948(c)(4)).

Plaintiffs contend that where the unlimited charitable deduction of § 642(c) is *not* available, the amounts not qualifying may then come within § 661. Plaintiffs make much of this point, including citation to favorable language from the eminent authority and defendant's counsel, M. Carr Ferguson. M. Ferguson, J. Freedland & R. Stevens, Federal Income Taxation of Estates and Beneficiaries (1970) at 379.

■ Whatever the merits of plaintiffs' contention that § 661 applies where the § 642(c) deduction is denied, the fact is that § 507(d)(1)(B)(ii) does not act to *deny* the § 642(c) deduction any more than § 1245 acts to deny depreciation deductions. Section 507 imposes a tax which is *measured* by reference to the amount of the deduction previously claimed under § 642(c). Since § 642(c) was available and, so long as available, was the only deduction which could be claimed by the Loock Trust, it is the proper measure of the tax under § 507(d)(1)(B)(ii).

The final point of contention is the calculation of the aggregate tax benefit under § 507(d)(1)(B). The portion of the § 507 tax paid by plaintiffs under this subsection was calculated as the difference between the 100 percent deduction claimed for distribution to the Foundation and a 20 percent retained benefit. The reasons for an application of that formula have not been explained.

As previously discussed, the Loock Trust claimed deductions under § 661 for 100 percent of its distributions to the Foundation for the tax years 1972 through 1975. Those deductions would properly have been taken in full only under § 642(c).

In imposing a tax on termination of private foundation status, § 507 recoups the aggregate tax benefit enjoyed by the private foundation and its substantial contributors. Section 507(d)(1)(B) defines a portion of the aggregate tax benefit of a trust thusly:

(B) the aggregate increases in tax * * which would have been imposed with respect to the income of the private foundation for taxable years beginning after December 31, 1912, if * * * (ii) in the case of a trust, <u>deductions under section 642(c)</u> (or the corresponding provisions of prior law) <u>had been limited to 20 percent of the taxable income of the trust (computed without the benefit of section 642(c) but with the benefit of section 170(b)(1)(A))</u>, * * * [Emphasis supplied.]

The proper interpretation of the underscored language is at issue.

The quoted language is ambiguous on its face. Both sides concede this point. As we read the language, it is susceptible to two interpretations. Plaintiffs urge that the paragraph requires a two-step calculation. The first step is to apply the final parenthetical which grants the benefit of § 170(b)(1)(A), the charitable deduction available to individuals for up to 50 percent of the individual's "contribution base." Then a second deduction is allowed under § 642(c). This deduction is limited under § 507(d)(1)(B)(ii) to 20 percent of the trust's taxable income instead of the 100 percent deduction normally allowed under § 642(c). The impact of the 20 percent deduction is further limited by the fact that it is applied only to the trust income remaining after the § 170(b)(1)(A) deduction. The net effect is that the trust retains a 60 percent deduction in calculating the aggregate tax benefit to be recovered. This portion of the § 507 tax then equals the 100 percent deduction taken by the trust less the 60 percent deduction the taxpayer is to retain.

The government points out a second interpretation without embracing it. It asserts that the parenthetical language merely modifies the phrase "taxable income of the trust." This limits the taxable income base to which the limited 642(c) deduction is applied without actually granting the § 170 deduction. Thus the 20 percent retained § 642(c) deduction is applied to 50 percent of the trust's income yielding a retained benefit of 10 percent of income or a 90 percent recoupment of tax benefit under this portion of § 507.

Where there is ambiguity in statutory language we can, of course, turn to the legislative history for enlightenment. In the case of § 507(d)(1)(B)(ii), the legislative history sheds no light. However, in 1954 Congress used almost identical language in § 681(b)(1) to limit the charitable deduction available to a trust which was engaged in certain prohibited activities. The House Committee on Ways and Means Report on that section reads:

> This section is identical with section 162(g) of the 1939 Code except that in subsection (b) the limitation of the deduction allowable under section 642(c) is changed to correlate the limitation with the charitable deduction allowed to individuals under section 170(b) of this bill. [H.R.Rep. No. 1337, 83d Cong., 2d Sess. A218, *reprinted in* [1954] U.S.Code Cong. & Admin.News, pp. 4017, 4357–4358.]

Defendant contends that when Congress used the language from § 681(b)(1) in drafting § 507(d)(1)(B)(ii), it must have intended the same result as it intended in § 681(b)(1). Applying the committee language to § 507, defendant argues, allows plaintiffs the benefit of a 50 percent deduction under § 170(b)(1)(A) but does not allow any further deduction under § 642(c).

The problem with defendant's argument is obvious. It would require us to ignore completely the language of § 507(d)(1)(B)(ii) preceding the parenthetical. Had Congress intended the result urged by defendant, it would merely have used the language within the parentheses and no more.

■ So we have statutory language susceptible to two conflicting interpretations, and, on seeking resolution through legislative history, we find language which seems to support a third interpretation which is contrary to any possible reading of the statute. Where statements in committee reports and statutory language conflict and application of the statutory language does not yield an absurd result, we implement the statutory language. *Hart v. United States*, 218 Ct.Cl. ——, 585 F.2d 1025 (1978).

Furthermore, we do not agree that defendant's interpretation of the legislative history is correct. Defendant claims that the quoted legislative history requires an equivalence between the trust's retained benefit under § 507(d)(1)(B) and the charitable deduction for individuals under § 170(b)(1)(A). However, the committee language says that the statute was intended to "correlate" the benefits, meaning only "to bear reciprocal or mutual relations." *Merriam-Webster New International Dictionary* (3d ed. 1968). As such, to be consistent with the legislative history the statutory language need not be interpreted to require equivalence between retained benefit under § 507 and the charitable deduction under § 170.

■ We conclude that the interpretation of § 507(d)(1)(B) urged by plaintiffs is correct. While the language of the statute can be read to yield either a 10 percent retention of the benefit or a 60 percent retention of the benefit, we decide on 60 percent for three reasons.

Looking first to the language of the statute, it can be argued that the parenthetical functions only to limit the taxable income figure to which the limited § 642(c) deduction is applied. Thus a 20 percent deduction under § 642(c) would be taken against 50 percent of the trust's income, yielding an effective deduction of 10 percent of income. The problem with this reading is that the parenthetical states "computed without the benefit of section 642(c) but with the *benefit* of section 170(b)(1)(A)." [Emphasis supplied.] Under the reading which yields a 10 percent retained benefit, the taxpayer, far from benefiting from § 170(b)(1)(A), suffers a detriment from that section. The only way to yield a benefit from § 170 would be to read the parenthetical as not merely limiting the § 642(c) deduction base, but rather as actually granting taxpayer the § 170(b)(1)(A) deduction as the first step to calculating the retained benefit. In fact, defendant reads the parenthetical in this manner in urging a 50 percent retained benefit. The problem with defendant's argument is that defendant fails to follow through with the next step, the granting of the limited § 642(c) deduction.

Our second reason for concluding that § 507(d)(1)(B)(ii) allows a 60 percent retained benefit is based on the legislative history raised by defendant. The 60 percent reading is more in keeping with a congressional intent to " * * * correlate the limitation with the charitable deduction allowed to individuals under § 170(b) * * " than would be a reading which yields a 10 percent deduction. The charitable deduction allowed to individuals under § 170(b)(1)(A) is based on the individual's "contribution base" which is defined by § 170(b)(1)(E) as "adjusted gross income * * * " computed without any net operating loss carryback. In applying § 170(b)(1)(A) to a trust, the 50 percent deduction must be calculated on the basis of the trust's taxable income, generally a lesser amount than adjusted gross income. It is therefore reasonable to conclude that the limited § 642(c) deduction (as calculated on the trust's taxable income), on top of the 50 percent § 170(b)(1)(A) deduction resulting in a 60 percent total retained benefit would have been the method Congress used to approximate the § 170(b)(1)(A) deduction for an individual (as calculated on the basis of the larger adjusted gross income amount).

■ Finally, as a general matter, where there is real ambiguity in the language of a taxing statute, any doubt should be resolved in favor of the taxpayer. *Citizens National Bank of Waco v. United States*, 213 Ct.Cl. 236, 255, 551 F.2d 832, 843 (1977).

In summation, we find that both the Margaret Loock Trust and the Caroline D. Bradley Life Trust fall within the language of § 4947(a)(1) and hence were private foundations. Furthermore, we find that §§ 4940 and 507 are not unconstitutional in their application to either the Loock or Bradley Trust. In applying the § 507 tax to the Loock Trust, the aggregate tax benefit to be recovered upon termination of the trust includes the charitable deductions taken by Harry L. Bradley upon establishment of the trust, the excess deduction taken by the Loock Trust for distribution to the

Foundation over the 60 percent retained benefit, and interest on the above.

Accordingly, our conclusion is that defendant is right on most of the issues in the litigation, but there has been some overpayment due to the erroneous method of computing the allowable deductions. Judgment is entered for plaintiffs in accordance with the foregoing opinion and the cases are remanded to the trial division under Rule 131(c) for computations of the refunds due, with interest according to law.